[No. 22736. Department Two. December 30, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. MARIE CARR, *Appellant*.[1]

*W. B. Mitchell*, for appellant.

*Chas. W. Greenough* and *Frank Funkhouser*, for respondent.

[1]Reported in 294 Pac. 1016.

BEELER, J.—A chronological statement of the history of the proceedings in this case appears in the companion case of *State v. Carr, ante* p. 74, 294 Pac. 1013.

On March 20, 1930, appellant was charged in a substitute information containing four counts, under Rem. Comp. Stat., § 2601-2, known as the "insufficient funds" statute. Count 1 charged grand larceny in that on October 26, 1929, appellant did willfully and feloniously, with intent to defraud, make, utter, and deliver to the Zellerbach Paper Company her check, knowing at the time of such drawing and delivering that she had not sufficient funds in, or credit with, the bank to meet payment on the check.

Counts 2, 3, and 4, each charged appellant with petit larceny, in that she drew the three checks mentioned in each of the three counts knowing that she had not sufficient funds in the bank to meet payment. The check referred to in count 2 is dated October 31, 1929, the one in count 3, November 23, and the one in count 4, October 22, all drawn on the Hillyard State Bank. She was convicted on counts 1, 2, and 3, and acquitted on count 4, and she has appealed from the judgment and sentence on the verdict.

Appellant relies on five assignments of error. First, it is claimed that the trial court erred in denying appellant's motion for a directed verdict as to counts 2 and 3 of the information. The argument advanced is that appellant had no criminal intent to defraud, in that she honestly believed that the money was in the bank to meet the payment on each of the two checks, and that in any event the injured parties had executed written receipts wherein they acknowledged payment.

The record discloses that the check described in count 3 amounting to $18.25, and the balance due on the check described in count 2 in the sum of $3.99 was

paid by the National Surety Company on January 20, 1930. Apparently $4.11 had previously been paid on the check referred to in count 2. Moreover, on April 22, 1930, appellant procured signed receipts from each payee named in the respective checks, acknowledging payment. From these circumstances, it is argued that she is entitled to the benefits accorded under Rem. Comp. Stat., § 2127, which provides:

"In such case, if the party injured appear in the court in which the cause is pending at any time before final judgment therein, and acknowledge in writing, that he has received satisfaction for the injury, the court may, in its discretion on payment of the costs incurred, order all proceedings to be discontinued and the defendant to be discharged."

It must be borne in mind that, on February 19, 1930, she was charged in the original information under the bad check statute on these identical checks, and was convicted. Later, a new trial was granted and she was again convicted. A few days later she was granted a new trial for the third time, and thereafter the cause was set and retried on May 7, 1930, resulting in a conviction, from which this appeal followed. Furthermore, the check described in count 2 was issued by appellant on October 31, 1929, and although it was returned marked "insufficient funds," and although it remained unpaid, at least partially, until January 22, 1930, nevertheless, on November 23, 1929, she drew the check described in count 3, which was returned marked "insufficient funds." Surely she must have known on November 23 that the check of that date would be dishonored. Whether a misdemeanor charge should be dismissed is, by the statute, *supra,* placed within the sound discretion of the trial court, and in view of the record, we find no abuse of discretion in refusing to dismiss counts 2 and 3.

It is next claimed that the trial court erred in denying appellant's motion for a directed verdict as to count 1. The question raised was whether the check described in count 1 was a postdated check. The check bore date October 26, 1929. It is appellant's contention that, on Friday, October 25, 1929, the Zellerbach Paper Company delivered some merchandise to her and that on the same day she gave the check which bore date October 26 to its driver or representative, and therefore, being a postdated check, the statute is inapplicable, and no crime was committed. This argument is ingenious but unsound. While there is a sharp conflict in the testimony as to whether the Zellerbach Paper Company delivered its merchandise on Friday, October 25, as appellant contends, or whether the merchandise was delivered on Saturday, October 26, as contended by the state, yet there is ample evidence in the record, if believed, tending to establish the state's theory as to the date when the merchandise was delivered. If it be a fact that the merchandise was delivered on October 26, and that the check was given on the same day, then the statute applies and a crime was charged. There being a conflict in the evidence, this question was properly submitted to the jury.

The next assignment of error relates to the refusal of the court to give appellant's proposed instructions numbered 3, 4, and 5, and the giving of instructions numbered 2 and 4. We find no error in the refusal of the trial court to give appellant's proposed instructions 4 and 5. Now, as to appellant's proposed instruction No. 3 and instruction No. 4 given by the court. Both relate to the delivery of merchandise by the Zellerbach Paper Company to appellant and the giving of the check by her to its driver in payment of the goods. Instruction 4 reads:

"If you believe from the evidence in this case that the Zellerbach Paper Company delivered merchandise to the defendant on October 25, 1929, and the defendant on that date gave the employee of the Zellerbach Paper Company the check described in count 1 of the information and dated the check the next day, *with the knowledge and consent of the employee of the said Zellerbach Paper Company, and that such check dated as of a time subsequent to the delivery of the goods in payment for which the check was then given was accepted by the employee of the Zellerbach Paper Company knowing the same was postdated* and not payable before a date subsequent to the delivery of the merchandise, then you will find the defendant not guilty of the crime charged in count 1 of the information."

Appellant's principal objection is to the italicized portion of the instruction. Appellant offered testimony tending to establish that the goods were delivered on Friday, October 25, and that she gave the check dated October 26 to the paper company's employee, whereas the state's testimony was to the effect that the goods were delivered and the check received on October 26, and that consequently the check was not a postdated check. Clearly, the instruction was in accordance with appellant's theory of the case, and the element of knowledge and consent on the part of the employee of the paper company as a condition precedent was rightly made a part of the instruction.

Appellant places particular stress on the giving of instruction No. 2 by the court, and claims error. The instruction was proper. It was:

"If you find from the evidence in this case, beyond a reasonable doubt, that the defendant did commit the crimes, or either of them, as charged in the several counts in the information, then any payment or offer of payment of the amount of such checks by the defendant, or any other person, afterwards, cannot be considered as any defense in this case."

This court said in *State v. Shears,* 119 Wash. 275, 205 Pac. 417, that,

"Reparation or simply the return of property stolen, when one finds his crime has been discovered, is no defense to a prosecution for the larceny."

In *State v. Craddick,* 61 Wash. 425, 112 Pac. 491, this court said:

"A thief will not be accorded immunity by the law by simply returning the stolen property when he finds that his crime has been discovered."

Finally, it is claimed that the appellant was denied a fair and impartial trial because of misconduct on the part of the trial deputy representing the state. It is claimed that his conduct was such as to prejudice the minds of the jury against her, and from an examination of the record, we are satisfied that the cause must be reversed on this ground. The following illustrates, in part, the misconduct relied on by appellant:

"Q. Mr. Donovan never presented anything like this when he was the attorney? Mr. Mitchell: I object to that statement and ask that it be stricken. The Court: The jury will disregard it. Q. Mr. Donovan never presented it to you? Mr. Mitchell: Your honor, *he ought to be instructed about that.* I object to that statement of counsel. The Court: It hasn't any place in this case. Q. You served this warrant dated January 17—I want to get at the date of this conversation—Mr. Mitchell: I don't believe he wants to get the date. He has no right to introduce that kind of stuff here. Mr. Funkhouser: I am just proving her admission and that she knew she had issued them, and leading up to the introduction of the evidence in these letters, that she received those letters. Mr. Mitchell: I am going to object to counsel's statement—trying to get it before the jury—and I ask the court to tell the jury to disregard it, and to strike it out, *and instruct the attorney not to carry that any further.* The Court: The jury will disregard any statement on either side

unless you find it is substantiated by the evidence in this case to your satisfaction. Q. I want to ask you whether or not she acknowledged they had received a letter from the county auditor calling attention to a check that had been given them early in October that had not been honored? Mr. Mitchell: I want to make an objection to that in the record. The Court: Objection sustained. Mr. Funkhouser: Q. Where was the defendant when you were rushing around trying to get people to take this money? Mr. Mitchell: We object to that. What difference does it make? Mr. Funkhouser: *I am trying to show she was in jail.* Mr. Mitchell: I object to that statement, your honor. The Court: The objection will be sustained. Mr. Funkhouser: Q. This was the 22d day of January, wasn't it? A. Yes, sir. Q. She was arrested about the 18th of January, wasn't she? A. About that. Q. *She was in jail at the time, wasn't she?* Mr. Mitchell: Now, your honor, you sustained the objection before, and he goes right ahead. Q. When did you form this partnership with Mrs. Shellman? A. Oh, I don't know; in 1927, or in the first part of 1928. Q. How long had you been working for her? A. I couldn't say right off hand. Q. You had been living at her home a number of years? A. Had I? Q. I say, had you? A. No. Q. Where were you when you opened the Del Mar Shop? A. I was boarding there, yes. Q. How long had you been boarding there? A. Oh, possibly five months or four months; something like that. Q. You are this woman's (meaning Marie Carr) husband? A. I am. Q. When were you married? A. June 18, 1928. Q. *That was about fifty-two days after her husband was murdered out here?* Mr. Mitchell: Now, your honor, I am going to object. The Court: Objection sustained. The jury will disregard the suggestion."

On cross-examination of the defendant, Mrs. Carr:

"Q. Now, you are the wife of Mr. Carr, *who just left the stand?* A. Howard Carr, Yes. Q. When were you married? A. June 18, 1928. Q. *Are you the wife of the late James Shellman that was murdered?* A. Yes, sir. Mr. Mitchell: I object to that.

Mr. Funkhouser: I just want to show— Mr. Mitchell: You don't want to show anything and I object to it. The Court: Objection sustained. Mr. Mitchell: I want your honor to instruct the jury that man has no right to do that. The Court: The jury will disregard anything that the court sustains an objection to.''

This brief extract of the testimony indicates that the trial deputy disregarded the rulings of the court, and persisted in his attempt to bring before the jury matters, objections to which had been by the court sustained. Counsel attempted by his questions to show that appellant on one occasion was in jail, which was objected to by appellant and the objection sustained, and a moment later he put the identical question to the witness. Furthermore, when appellant's husband was on the stand he was asked: ''Q. *That is about fifty-two days after her husband* (meaning her former husband) *was found murdered out here?*'' to which question an objection was sustained by the court. Shortly thereafter his wife was called to the stand and asked: ''*You are the wife of the late James Shellman that was murdered?*'' to which an objection was interposed and by the court sustained.

The entire record discloses that the deputy prosecutor was over-zealous in his studied attempt to parade before the jury incompetent and irrelevant matters. Vigorous counsel need vigorous discipline, at times, at the hands of the trial court. The prosecuting attorney is a quasi-judicial officer, and it is his duty to see that one accused of a public offense is given a fair trial. This court has frequently stated the rule as to what constitutes misconduct on the part of counsel. The following cases are decisive on the question. In *State v. Devlin,* 145 Wash. 44, 258 Pac. 826, the prosecutor put the fact before the jury that the defendant's picture was in the rogue's gallery. The case was reversed. We said:

"The question involved is that of a fair and impartial trial. In *State v. Pryor,* 67 Wash. 216, 121 Pac. 56, this court said:

" 'A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles.'

"It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which pervades all the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. In the *Pryor* case just referred to, it was said that it must be remembered, as stated in *Hurd v. People,* 25 Mich. 404, 'that unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community.' "

In the case of *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, we said:

"The safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims."

See, also, the following: *Snider v. Washington Water Power Co.,* 66 Wash. 598, 120 Pac. 88; *Rogers v. Kangley Timber Co.,* 74 Wash. 48, 132 Pac. 731; *State v. Arnold,* 130 Wash. 370, 227 Pac. 505; *State v. Bozovich,* 145 Wash. 227, 259 Pac. 395; and *State v. Heaton,* 149 Wash. 452, 271 Pac. 89.

For the reasons assigned, the cause is remanded for a new trial.

MITCHELL, C. J., MILLARD, FULLERTON, and BEALS, JJ., concur.