THOMAS WHITE V. STATE OF NEBRASKA.

280 N. W. 433

FILED JUNE 28, 1938. No. 30384.

*M. O. Bates,* for plaintiff in error.

*Richard C. Hunter, Attorney General, Harry S. Grimminger, John G. Tomek, Elbert H. Smith* and *S. S. Diedrichs, contra.*

Heard before ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and KROGER, District Judge.

MESSMORE, J.

Plaintiff in error (hereinafter called defendant) was convicted of the offense of issuing a no-fund or insufficient-funds check to the Stickelman Auction Sales Company of Gothenburg, Nebraska, on June 12, 1937, in the amount of $2,466.76. Motion for a new trial was overruled, and the court imposed sentence. The defendant was tried on one count which was proper in substance and form to bring the case to this court for review upon the alleged errors made by the trial court and the sufficiency of the evidence, as contended by defendant.

Defendant was engaged in dealing in live stock in various towns in Nebraska. In the latter part of October or the fore part of November, 1936, he contacted Ernest C. Stickel-

man, who was, and had been for the past 34 years, engaged in the live stock and commission business, and for the past six years in Gothenburg under the name of "Stickelman Live Stock Auction Sales Commission Company," as sole owner. The defendant testified that he told Mr. Stickelman that he desired to buy live stock at his sales barn and gave certain references, First National Bank of Boulder, Colorado, where he lived; that on numerous occasions subsequent to that date he purchased live stock ranging in amount from $300 to $800, at different sales. On the day in question, June 12, 1937, he purchased some 81 head of hogs and eight head of cattle, giving in payment therefor a check in the sum of $2,466.76. This check was dated "7/12 1937;" in other words, it was postdated. On the evening of June 12, 1937, defendant loaded the stock which he had purchased; it was shipped to Denver, Colorado, and disposed of early in the following week. The check in question was deposited for payment and returned for the reason that it was not yet due; that it would be due July 12, 1937. At the time the check was presented to the clerks at the sales barn, no statement was made by the defendant as to the check; it was received by a young lady, handed by her to another clerk, and subsequently to a third clerk, who placed it in a drawer, none of the clerks noticing the date of the check. Mr. Stickelman did not see the check at the time. Later, he and one Burke, who had had a similar experience just previously, journeyed to Boulder, Colorado, in search of the defendant, but were unable to locate him either in Boulder or in Denver, and, in fact, he was not located until arrested in Minneapolis, Minnesota, in September. On July 12, 1937, there were insufficient funds in the bank at Boulder to pay the check; the check was protested, and the check and protest thereof were turned over to the county attorney.

The defendant contends that the verdict of the jury is not sustained by sufficient evidence and is contrary thereto.

This prosecution was brought under section 28-1212, Comp. St. 1929, which reads in part as follows: "Any per-

son who, with intent to defraud, shall make or draw, or utter, or deliver, any check, draft, or order for the payment of money, upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivering, that the maker, or drawer has not sufficient funds in, or credit with, such bank or other depository for the payment of such check, draft or order, in full upon its presentation, shall upon conviction, be punished," etc.

The defendant contends that the check in question is a postdated check and not within the contemplation of the above statute; that the statute contemplates a demand check, and that, at most, the check in the instant case is a promise to pay in the future and is analogous to a promissory note; that the record discloses no evidence that at the time of the issuance of the check the defendant had insufficient credit with or funds in the bank upon its presentation for payment, and that Stickelman, by not protesting the check until 30 days thereafter, July 13, acquiesced in extending credit to the defendant. Defendant contends that the gist of the offense is a failure to have sufficient funds or credit in the bank at the time of presentation, and that this check was returned by the bank because it was a postdated check.

Defendant cites cases holding to the effect that a postdated check is not within the purview of the statute making it an offense to draw a check without having sufficient funds with which to meet it. An analysis of most of the cases cited clearly indicates that the payee therein had an agreement with the maker to hold the check, thus creating a contractual relation to permit the maker to pay in the future, or the transaction was such that the holding of the check was a necessary incident by agreement of the parties. The payee having acquiesced in or agreed, there could be no intention to defraud. There are some cases cited which hold that a postdated check is not within the purview of the statute. We believe that this is not conducive to a logical conception, in view of the provisions of our statute and the circumstances of the instant case.

An examination of section 28-1212, Comp. St. 1929, indi-

cates that it does not state "postdated check;" neither is the date of any instrument, as contained in the statute, given or required to be given. The principal ingredient of the offense is the intent to defraud.

The well-considered case of *People v. Bercovitz*, 163 Cal. 636, 126 Pac. 479, 43 L. R. A. n. s. 667, held that a postdated check was within the contemplation of the California statute which, in some particulars, is like the statute in Nebraska. In commenting on this point the court said in the body of the opinion (p. 638) : "There is nothing in the language used having the effect of excepting a case from the operation of the statute merely because the 'check or draft' is postdated. It is essential, of course, that there should be on the part of one giving the check or draft both present knowledge of the insufficiency of funds and absence of credit with such bank, etc., to meet the check or draft in full upon its presentation, and an intent to defraud, but no reason is apparent why both of these elements may not exist as well in the case of a postdated check or draft as in the case of one bearing the date of its delivery." And, in considering the word "credit," which appears in the California and in the Nebraska statute, the opinion quotes that part of the statute as follows: "The word 'credit' as used herein shall be construed to be an arrangement or understanding with the bank or depository for the payment of such check or draft." The Nebraska statute (Comp. St. 1929, sec. 28-1212) refers to "check, draft, or order for the payment of money," and is an independent act, founded upon the intent to defraud by the issuance of a check, draft, or order for the payment of money. The guilt of the defendant would be necessarily determined by his intention to defraud, whether the check is payable on demand or postdated. The case of *People v. Bercovitz, supra*, meets the situation as contended for by the state in the instant case.

The defendant further contends that the check in question, being a postdated check, payable in the future, constitutes one due and payable at a future time, and that the

statute, construed to provide criminal punishment for its nonpayment, is contrary to section 20, art. I of the Constitution of Nebraska, which provides: "No person shall be imprisoned for debt in any civil action or mesne or final process, unless in cases of fraud." Inasmuch as an intent to defraud must be shown in this action if the defendant is to be found guilty, the provision of the above act we believe is sufficient to preclude the contention that the provision of the Constitution, above quoted, has been violated.

Defendant cites, in support of his contention on this proposition, *Burnam v. Commonwealth*, 228 Ky. 410, 15 S. W. (2d) 256, and *State v. Nelson*, 58 S. Dak. 562, 237 N. W. 766. In the former case, a Kentucky law, providing punishment for the offense of making, uttering and delivering a check, draft or order, for payment on presentation, without regard to an attempt to defraud, was held violative of the Constitution. In the opinion we find this language (p. 411): "The essential and controlling difference between the act (the Kentucky act) and other statutes of this kind, including those of our own state (Kentucky) enacted and repealed from time to time, is that the element of fraud or other criminal purpose is not an ingredient." This is not true of the Nebraska statute because intent to defraud is one of the very essential elements of the offense.

In the case of *State v. Nelson, supra,* the supreme court of South Dakota held that a postdated check is only a representation of the drawer that he expects to have funds in the bank with which to pay the check on the date named therein; that in this respect there is no essential difference between a postdated check and a promissory note, and no difference in principle between prescribing sentence for failure to pay a promissory note and for failure to pay a postdated check; holding the law to be unconstitutional as effective against a postdated check as imprisonment for debt. An examination of the above case indicates that the check was delivered to payee on October 22 and was dated November 22. Several provisions of the statute were cited,

the court saying (p. 565) : "It is not until the check has been presented at the bank or after maturity and payment refused for lack of funds that the crime was complete; therefore the penalty fixed by the law is for failure to pay the check rather than for issuing the check." The opinion quotes section 3 of the act as follows: "Where a prosecution is begun under this act, the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or the judge that he has had an account in said bank upon which said check, draft or order was drawn, thirty days next prior to the time said check, draft or order was delivered, and that said check, draft or order was drawn upon said bank or depository without intent to defraud the party receiving the same;" and the opinion adds: "The question then becomes, is the penalty provided by section 2 inflicted for issuing the bad check or for failure to make satisfaction as provided under section 3?"

The above case is not analogous to the situation in the case at bar, wherein the defendant contends that section 28-1213, Comp. St. 1929, must be read in connection with the preceding section 28-1212, and that the two sections constitute the complete no-fund check act; that the penalty is inflicted for failure to make satisfaction, in view of said section 28-1213; that the execution and delivery of the check by defendant, as set out in said section 28-1212, does not constitute a complete offense; that it is not until the check has been presented at or after maturity and payment is refused for lack of funds that the offense is complete; that the penalty fixed by the law is for failure to pay the check, rather than for issuing the check, and that, therefore, the statute violates the provisions of the Constitution, hereinbefore cited.

Section 28-1213, Comp. St. 1929, reads: "In any prosecution under this act as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee because of lack of funds or credit, shall be presumptive

evidence of intent to defraud and of knowledge of insufficient funds in, or credit with such bank or other depository, provided such maker or drawer shall not have paid the payee thereof the amount due thereon, together with all costs and protest fees, within five days after receiving notice that such check, draft or order shall have been protested, the notice of protest thereof shall be admissible as proof of such presentation for payment, nonpayment and protest; and if such notice of protest or the drawee's notice of dishonor thereof, shall state that payment of such check, draft or order was refused because of lack of funds or credit of the maker or drawer, then such notice of protest or notice of dishonor shall be presumptive evidence that there was a lack of funds in, or credit with, such bank or other depository, for the payment of such check, draft or order."

Suffice it to say that section 28-1212, Comp. St. 1929, states the offense and punishment therefor; and that section 28-1213, Comp. St. 1929, is purely a section relating to evidence that may be introduced and is not essential to the proof, as required in section 28-1212, to complete the offense; nor does it contain any of the essential ingredients of the offense, but it is purely of an evidentiary character, which clearly distinguishes it from the South Dakota case cited by defendant.

In this connection, *State v. Taylor*, 335 Mo. 460, 73 S. W. (2d) 378, 95 A. L. R. 476, held an act to be constitutional where a postdated check was given, and not violative of the provision of the Constitution of Missouri that imprisonment for debt will not be allowed, and the opinion cited in support thereof the California case of *People v. Bercovitz, supra,* adopting for the purposes of its opinion the propositions of law as set forth in the California case, relating to a postdated check as within the contemplation of no-fund check statutes. We deem further analysis on this proposition unnecessary, in view of our interpretation of the Nebraska act, as hereinbefore set out.

The defendant contends that the evidence is insufficient

to constitute the offense. Without repeating the evidence, it will be noted that the defense offered was a conversation had between the defendant and Stickelman that defendant would be unable to pay for the live stock which he would purchase on that date, and that he would give a postdated check, which was acceptable to Stickelman. This conversation was denied by Stickelman, and the jury believed his evidence. The evidence further discloses that immediately after receiving the live stock and selling it, this defendant went to many states, until he was finally apprehended in Minneapolis, Minnesota. It will be noted that on June 12 the defendant purchased from Stickelman from three to eight times as much live stock as he had purchased on previous occasions. His conduct would indicate that it led the clerks of Stickelman to believe that the check was payable on the date on which he gave it. On the trips made by Stickelman and Burke to Boulder and Denver, they were unable to locate the defendant. He had moved out, bag and baggage. When he was finally apprehended and confronted by Burke and Stickelman, he said that he moved because he was "on the spot" and was "in a jam." On the previous day, June 11, 1937, he had made a similar purchase and had given a similar postdated check to Mr. Burke at North Platte, Nebraska, for 800 and some odd dollars. This evidence was admitted solely for the purpose of showing fraudulent intent on the part of the defendant. We believe that the evidence was sufficient to submit to the jury the question of defendant's intent to defraud Mr. Stickelman. Many authorities are cited to the effect that this is an essential ingredient of the offense under statutes of this character. Without citing the authorities, we conclude that section 28-1212, Comp. St. 1929, specifically makes the intent to defraud an essential element of the offense.

Exceptions are taken to instructions given by the trial court in that the value of the property lost by Stickelman was fixed by the jury. While this is an unnecessary proposition to have submitted to the jury, we find no prejudicial error in such submission.

Exception is also taken to the admission of the evidence of Mr. Burke, who on the day previously had had a similar transaction with defendant. In this connection, in *State v. Sparks,* 79 Neb. 504, 113 N. W. 154, it was held: "When, however, the transaction on which the prosecution is based is of such a character as to require other or further proof, on the part of the prosecution, of the defendant's guilty knowledge and intent, evidence that he has committed like crimes in a similar manner, at or about the same time, or as a part of the same general scheme to defraud, may be received for that purpose." This was also held in *People v. Bercovitz, supra.*

Exception is taken to an instruction on the foregoing proposition given by the trial court. The record discloses that the court stated that the evidence was admitted simply for the purpose of showing fraudulent intent and it so instructed. While the instruction lacked some degree of refinement, it was sufficiently explicit.

Defendant complains that the court did not instruct on section 28-1213, Comp. St. 1929. In view of our statement relating to such section of the statute, we see no reason why the court should have so instructed.

AFFIRMED.