[No. 34644.    Department Two.    November 9, 1960.]

THE STATE OF WASHINGTON, *Respondent*, v. R. C. EVANS, *Appellant.*[1]

[1]Reported in 356 P. (2d) 589.

*Moore & Rabideau,* for appellant.

*Walter J. Deierlein, Jr.* and *Harry A. Follman,* for respondent.

FINLEY, J.—Appellant was convicted of two counts of grand larceny under that portion of RCW 9.54.090 which reads:

"Every person who . . . receives . . . in any manner specified in RCW 9.54.010—

" . . .

"(5) Property of the value of more than twenty-five dollars if obtained by color or aid of any . . . check . . . , knowing that the . . . drawer of such . . . check . . . was not authorized or entitled to make or draw the same; . . .

"(6) . . . shall be guilty of grand larceny and be punished by imprisonment in the state penitentiary for not more than fifteen years."

Violation of the statute in the manner specified in RCW 9.54.010, insofar as here material, is "with intent to deprive or defraud the owner thereof."

In May of 1955, appellant was engaged in a house moving and construction business. He entered into an arrangement with the Skagit Valley State Bank to assign contracts to the bank, and the bank, from time to time as the needs of appellant's business required, would advance loans to him to cover his operating costs. During the month of May 1955, a number of such loans were made. The history of appellant's checking account with the bank during this period is one of great fluctuation. The account was overdrawn on a number of occasions. The overdrafts were followed by substantial deposits made soon thereafter. Most of the deposits were made possible by loans from the bank.

On June 3, 1955, appellant contracted to purchase from a tailor, one Wasyl Solima, four new suits for a total price

of $145.23. Solima refused to make the necessary alterations until an initial payment of $50 had been made. Appellant thereupon drew on the Skagit Valley State Bank a check for $50. The following day, two of the suits were released to appellant on the strength of the down payment; and later that day, the other two suits were delivered to him, after he had drawn another check—this time for $95.23 —on the Skagit Valley State Bank. These two checks are the bases of the two counts of grand larceny charged against appellant. They were deposited by the seller and were returned by the bank for lack of sufficient funds in appellant's account.

At the trial (where he was represented by counsel other than those before us on this appeal), appellant did not deny drawing the checks; nor did he deny that, at the time they were presented for payment, his account lacked funds to cover them. The defense centered primarily around an authorization in the form of a memorandum to the bank that a certain supplier of materials be paid $792.29 directly from the "contract money" from two named contracts. The theory of the defense was that there had been an agreement that no payment would be made on the strength of the authorization until all proceeds from the named jobs had been paid, and that had the debt to the materialman not been paid when it was, on May 12, there would have been sufficient funds in the bank to pay the Solima checks. Appellant denied having knowledge on June 3 that the debt to the materialman had been paid. The prosecution contended that appellant did know of the $792.29 charge against his account; and that, in any event, he subsequently knew that his account was overdrawn—so he must have known that the Solima checks could be paid only if checks drawn earlier did not precede the Solima checks to the bank. The key issue, therefore, was whether appellant knew at the time he drew the checks to Solima that he had already drawn checks sufficient in amount to exhaust his bank account.

Appellant's assignments of error may be summarized as being directed to the following points:   (1) refusal by the

trial court to give a requested instruction; (2) the applicability of RCW 9.54.090(5); (3) admission in evidence of certain checks drawn by appellant; (4) admission of evidence of appellant's indebtedness on open accounts; (5) the nature of the deposits to appellant's checking account; and (6) the sufficiency of the evidence.

(1) The essence of the rejected instruction was that in order to find appellant guilty the jury must find that at the time he drew the Solima checks he knew that they would not be paid when presented. The trial court's instructions covered the matters of known lack of authorization or entitlement to draw the checks, intention to defraud, and appellant's knowledge of the status of his account. It was not error to reject appellant's requested instruction, because the same matter was covered by the instructions which were given. *Atkeson v. Puget Transp. Co.* (1926), 139 Wash. 552, 247 Pac. 956.

(2) The elements of RCW 9.54.090(5) were incorporated into the trial court's instructions to the jury. No exception to these instructions was taken. Appellant cannot now contest the applicability of that statute, for the instructions became the law of the case. *Schneider v. Noel* (1945), 23 Wn. (2d) 388, 160 P. (2d) 1002; and cases there cited.

(3) Five checks drawn by appellant and payable to others than Wasyl Solima were presented in evidence by the state. As to two of the checks, no objection was made. They will not be further considered here.

The other checks were: one payable to Mount Vernon Sand and Gravel Company; and two payable to Lakeside-Western Lumber Company. Employees of both companies testified. The representative of Mount Vernon Sand and Gravel Company stated that the check given to his company was returned by the bank because of insufficient funds; and that, during the week of May 30 (May 30 was a Monday—the Solima checks were drawn on the following Friday and Saturday), appellant or his associates, being informed as to the status of the check, requested the company to redeposit the check. The witness from Lakeside-Western

Lumber Company testified that the two checks given to his company were also returned because of insufficient funds. He stated that, prior to June 7, appellant, or his associates, was told that the checks had been returned.

The obvious purpose of the evidence regarding the checks in question was to establish that, at some time before June 3, 1955 (the date of the first Solima check), appellant had notice that his account was insufficient.

Appellant assumes that delivery of the "NSF" checks to Mount Vernon Sand and Gravel Company and to Lakeside-Western Lumber Company constituted crimes. We will proceed on the basis of this assumption without deciding the correctness of it. He argues that delivery to Solima of checks which were not honored because of insufficient funds necessarily implies an intention to defraud; that the state should not be allowed to introduce additional evidence on this point; and that proof of other "NSF" checks was unnecessary and prejudicial. We have no occasion to answer this argument squarely, because, as we pointed out above, the evidence also helped to establish knowledge of an inadequate bank account.

The general rule that commission of unrelated crimes is inadmissible as evidence is not without well recognized exceptions. In *State v. Sedam* (1955), 46 Wn. (2d) 725, 284 P. (2d) 292, we said that

". . . proper evidence is not to be excluded because it may also tend to show that the accused has committed another crime, unrelated to the one for which he is being tried. . . . The test is, does the questioned evidence tend to establish (1) motive, (2) intent, (3) absence of accident or mistake, (4) a common scheme or plan, or (5) identity."

See, also, *State v. Hartwig* (1954), 45 Wn. (2d) 76, 273 P. (2d) 482; *State v. Gellerman* (1953), 42 Wn. (2d) 742, 259 P. (2d) 371; *State v. Americk* (1953), 42 Wn. (2d) 504, 256 P. (2d) 278; *State v. Goebel* (1952), 40 Wn. (2d) 18, 240 P. (2d) 251; *State v. Goebel* (1950), 36 Wn. (2d) 367, 218 P. (2d) 300. The present case is clearly within category (3). We have emphasized that:

" . . . These exceptions are not necessarily exclusive; in numerous cases cited, we have pointed out that the true test of admissibility is that the evidence of other criminal offenses must be relevant and necessary to prove *an essential ingredient* of the crime charged." *State v. Dinges* (1956), 48 Wn. (2d) 152, 292 P. (2d) 361.

An essential ingredient of the crime described in RCW 9.54.090(5) is that the drawer of the check know that he is not authorized or entitled to draw the same. It was not error to admit the checks that appellant objected to; *Cf. State v. Bradley* (1937), 190 Wash. 538, 69 P. (2d) 819, in which we held that in a prosecution under RCW 9.54.040 previously returned checks were admissible to show "a general plan of operations, and that appellant knew that the checks described in the information would not be paid upon presentation."

■ (4) No objection was made to evidence of appellant's indebtedness on open accounts until after all of it was in the record. An objection to the admission of testimony will not be considered by this court on appeal if it is not timely made in the trial court. *Ramsey v. Mading* (1950), 36 Wn. (2d) 303, 217 P. (2d) 1041.

■ (5) During the period from May 3, 1955, when appellant's account with the Skagit Valley State Bank was opened, through June 3, 1955, eleven deposits were made to the account. All but three of the deposits directly resulted from bank loans. Without objection by appellant, the prosecution introduced into evidence the bank ledger for appellant's checking account and a "liability ledger," which was a record of loans made to appellant, the dates of the loans, and other pertinent information. A witness who had been the cashier at the Skagit Valley State Bank in 1955 testified as to the meaning of the entries in the various columns of the two ledgers. The witness was then asked to compare the dates and amounts of loans shown on the liability ledger to the dates and amounts of deposits represented on the checking account ledger and to state which of the deposits were made possible because of loans. Appellant's objection that this line of inquiry was immaterial

was overruled, and properly so. The bank officer who supervised loans testified that, when appellant went into the bank for a new loan at a time when checks that had been presented were being held because of insufficient funds, the status of the account would be discussed with appellant. The officer further testified that there were overdrafts on May 11, May 19, May 24, and May 27. The cashier's testimony, allowed to stand over objection, was that loans and deposits were made on May 9, May 12, May 20, May 25, May 30 or 31, and June 3. It is apparent that the relationship between the dates of overdrafts and of loans and deposits helped to establish that appellant knew the status of his account on June 3, because he had received notice a number of times prior to June 3 that his account was exhausted and had to be replenished by getting additional loans. This is especially pertinent in view of appellant's denial of knowledge that the memorandum authorizing direct payment of $792.29 to a materialman had been honored on May 12.

(6) Appellant's challenge to the sufficiency of the evidence is without merit. We have examined the record and are satisfied that the prosecution presented evidence sufficient to justify the verdict.

The judgment of the trial court should be affirmed. It is so ordered.

WEAVER, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.