STATE OF CONNECTICUT *v.* JOHN SPITKO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 12-2603

Argued January 11—decided April 2, 1963

*Monroe S. Gordon,* of New Britain, for the appellant (defendant).

*Eugene T. Kelly,* prosecuting attorney, for the appellee (state).

KOSICKI, J.  The defendant, after a trial to the court, was convicted of the crime of obtaining goods under false pretenses in violation of General Statutes § 53-360.  He has assigned a number of errors in the refusal of the court to correct the finding by adding thereto certain facts claimed to have been admitted or undisputed and in the failure of the court to add other facts, with no specific reason given.  All of the corrections sought consist of statements of subordinate facts based on conflicting testimony or the credibility of evidence which the court, in the reasonable exercise of its judgment and discretion, could accept or reject.  The finding is not subject to correction.

On May 2, 1962, the defendant opened a checking account in the Willimantic Trust Company under the name of William A. Moore.  He was then engaged in the business of selling aluminum windows and doors.  At or about that time he ordered fifty custom-built windows and doors from the Lockheed Aluminum Window Corporation.  The merchandise was delivered to the defendant on May 11, 1962, on a C.O.D. shipment, requiring a cash payment of $457.48 before delivery.  The defendant gave a neighbor a check drawn by him, under the name of Moore, on the Willimantic Trust Company, dated May 15, 1962, to be given to the truck driver delivering the shipment.  The defendant

knew at that time that he did not have sufficient funds to cover this check. He never had enough money in his account to entitle him to draw for the sum specified. The check was ultimately dishonored. On five occasions checks on this account had been dishonored. Lockheed did not know Moore was Spitko. Thirty-two windows were returned by the defendant to Lockheed one week before the trial. The windows had been refused by a customer of the defendant for whom they had been custom made. They could not be resold without adaptation to other specifications.

The defendant's general claim of error is that, because of the giving of the postdated check in payment for the shipment, there could be no conviction under the statute. His argument is that the false pretense under the statute relates to a past or an existing fact. "A mere promise to do an act, even though the promisor has, at the time, no intention of keeping it, is not such a pretense or device as to come within the Statute against False Pretenses." *State* v. *Robington,* 137 Conn. 140, 142. From this, the defendant asserts, it follows that a postdated check is only a promise to pay in the future and therefore is not within the terms of the statute.

Section 53-360 consists of two separate parts, not dependent on each other, and each of which defines different factual elements necessary to constitute the crime of obtaining money or property by false pretenses. This crime is committed by "[a]ny person who, by any false token, pretense or device, obtains from another any valuable thing or any leasehold interest or the performance of any valuable service, with intent to defraud him or any other person, or obtains from another person any valuable thing or the performance of any valuable

service by means of delivering a check or an order or draft on a third party, purporting to be an order for the payment of money, when such person knows that the maker is not entitled to draw on the drawee for the sum specified."

The original statute, which remained substantially unchanged from 1830 to 1897, made punishable the obtaining from another, with intent to defraud him, any valuable thing by any false token, pretense, or device. Rev. 1888, § 1581. In 1897, an act was passed penalizing the obtaining of any valuable thing by means of "a check, order, or draft on a third party, purporting to be an order for the payment of money, when such person knows that . . . [he] is not entitled to draw on the drawee for the sum specified." Public Acts 1897, c. 120. This act, without any legislative change, was combined in the Revision of 1902 with the earlier provision against false pretenses to form what is now § 53-360. Rev. 1902, § 1415; Rev. 1918, § 6519; Rev. 1930, § 6368; Rev. 1949, § 8696. The latter part of § 53-360 is not to be confused, in purpose or definition of crime, with § 53-361, which was first passed in 1917. Public Acts 1917, c. 396. Such statutes, commonly referred to as bad-check laws, are not related to criminal provisions pertaining to false pretenses, and their main purpose is generally to avert the mischief to trade, commerce, and banking which the circulation of worthless checks inflicts. *State* v. *Avery,* 111 Kan. 588.

From the subordinate facts found and the claims of the state, as they appear in the transcript of evidence which we have examined in view of the general assignment of error challenging the conclusion of guilt, it appears that the court regarded the violation as being more particularly of the second part of § 53-360. The finding recites that the de-

fendant obtained the aluminum windows and doors from Lockheed by means of a check when the defendant knew, at the time, that he was not entitled to draw on the Willimantic Trust Company for the sum specified.

The defendant has cited many authorities in support of his position. There is an apparent divergence of opinion on the question whether the postdating of a check takes it out of the operation of a statute against false pretenses. 22 Am. Jur. 480, False Pretenses, § 70. Such division of authority may be generally explained by a difference in the statutes involved and a dissimilarity in the factual situations presented. See 29 A.L.R.2d 1181, & A.L.R.2d Sup. Serv. Thus, a postdated check may in itself offer no defense to a prosecution under either a false pretense statute or a bad check statute, even in jurisdictions where such a defense has been allowed, unless the recipient agreed or understood the acceptance of the check to be a promise of future payment or an extension of credit. See cases cited in note, 29 A.L.R.2d 1181, 1182, 1183.

"The lack of authority of the drawer of a draft to draw upon the drawee has been held to bring the case within the provisions of a general statute against obtaining money under false pretenses." 22 Am. Jur. 474, False Pretenses, § 56; note, 35 A.L.R. 350. The authorities seem to be in agreement in holding that statutes similar to ours apply to postdated checks. Note, 29 A.L.R.2d 1181, & A.L.R.2d Sup. Serv.; see, e.g., *State* v. *Eikelberger,* 72 Idaho 245; *State* v. *DeNicola,* 163 Ohio St. 140; *White* v. *State,* 135 Neb. 154; *People* v. *Westerdahl,* 316 Ill. 86; *People* v. *Bercovitz,* 163 Cal. 636; *People* v. *Weaver,* 96 Cal. App. 1.

The offense was committed when the property was obtained upon delivery of the check. 22 Am.

Jur. 476, False Pretenses, § 60. Although the state did not rely directly on the first part of the statute, it is obvious that the defendant had resorted to a pretext by passing the check as cash, when delivery of the shipment expressly required a cash payment. The check was given to the operator of the truck, who, so far as appears, was without authority to accept the check or to deliver the merchandise except on payment of cash or its equivalent. The goods were not sold on credit, nor did Lockheed at anytime intend to extend credit to the defendant. Admittedly, the defendant resorted to the pretense used in order to operate on the capital of Lockheed, expecting to remit for the windows and doors after he had been paid by his customer. The deal with the defendant's customer, however, was unsuccessful and the loss fell on Lockheed. The defendant deliberately placed the risk of loss on Lockheed and did so by delivery of the worthless check, falsely representing it to be cash. The offense became complete when the property was obtained by the means used by the defendant, and was not purged by the subsequent restoration of a number of the windows ordered. *Pepper* v. *People,* 75 Colo. 348; *State* v. *Holmes,* 98 Kan. 174; *Commonwealth* v. *Ferguson,* 135 Ky. 32; 22 Am. Jur. 490, False Pretenses, § 85.

Evidence of five other occasions when checks on the same account had been dishonored was admissible on the question of the defendant's knowledge of the status of his account and to show his guilty knowledge and intent to deceive. *People* v. *Bercovitz,* 163 Cal. 636.

There is no error.

In this opinion PRUYN and JACOBS, Js., concurred.