[No. 39700.     Department One.     July 9, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. JACK ETHERIDGE, *Appellant.*\*

*\*Reported 443 P.2d 536.

*Richard J. Glein,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Thomas S. Wampold,* for respondent.

ARMSTRONG, J.†—The defendant, Jack Etheridge, and his wife, Joyice, were charged by information with two counts of grand larceny by check.[1] Count two was dismissed on a

---

†Judge Armstrong is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[1]RCW 9.54.010 provides: "Every person who, with intent to deprive or defraud the owner thereof—

"(1) . . . .

"(2) Shall obtain from the owner or another the possession of or title to any property, real or personal, by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not authorized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune-telling; or

". . . .

"Steals such property and shall be guilty of larceny."

RCW 9.54.090 states: "Every person who steals or unlawfully obtains, appropriates, brings into this state, buys, sells, receives, conceals, or withholds in any manner specified in RCW 9.54.010—

". . . .

"(5) Property of the value of more than twenty-five dollars if obtained by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or

challenge to the sufficiency of the evidence and we are not here concerned with it. The jury found the defendant, Jack Etheridge, guilty of count one. The following facts are pertinent to his appeal from the judgment entered by the trial court.

In late November, 1966, defendant and his wife moved to this state from the state of Virginia, after a 2-month stopover in Florida. In December, 1966, defendant's wife opened a bank account with a Seattle bank with a check in the sum of $275, which she drew on a Virginia bank. The check was not honored. Later, she sold her automobile for $250 and deposited that amount in the Seattle bank. Fourteen checks, totalling $11,564.15, were drawn on the Seattle account by both defendant and his wife.

Defendant visited the showroom of Tom Chapman Ford on several occasions, decided to purchase a new station wagon, and delivered three checks to cover the purchase price. All of the checks were dated the day of the sale, December 16, 1966. Defendant and his wife testified that the salesman was instructed to hold the checks at the time they were delivered to him because defendant had insufficient funds, but was expecting some money from a sale of a business in Virginia. Defendant testified that the salesman agreed to hold the checks, but the salesman testified that he was told to hold only two of the checks and no instructions were received concerning the third check. Count one of the information is based on that check.

Defendant and his wife were arrested in Great Falls, Montana after the bank returned the check for insufficient funds. Defendant was driving his own automobile at that time, and his wife was driving the new station wagon. They were using credit cards issued in the names of third persons to finance their trip. Defendant had removed the Washington license plates from the station wagon and

drawer of such order, check, or draft was not authorized or entitled to make or draw the same; or

"(6) . . . [S]hall be guilty of grand larceny and be punished by imprisonment in the state penitentiary for not more than fifteen years."

replaced them with Florida plates, which had previously been issued to Mrs. Etheridge and had been removed from the automobile she had sold for $250. Defendant explained on the stand that he removed the Washington license plates from the station wagon because they had expired, that he was merely making a business trip to Montana, that he had telephoned the car dealer and left word with a secretary that he was going to Montana on business, and that no effort was made to conceal his identity or that of his wife while in Montana. He explained that he was driving his own automobile which had license plates which were known to the Washington car dealer, that he and his wife stopped at a Montana Ford dealer's establishment on several occasions to have adjustments made on the new automobile, and on those occasions they used their correct names.

The assignments of error basically present three major issues:

(1) May the defendant be found guilty of grand larceny by check for the issuance and delivery of a check, which the payee agreed to hold for presentation until a subsequent date?

(2) Were the requested out-of-state witnesses material to the defense, and was it, therefore, error for the trial court to fail to certify and request their attendance?

(3) Was it error to permit the prosecuting attorney to cross-examine on the use of the credit cards of third persons, thereby admitting evidence of another unrelated offense?

Defendant first contends that the trial court erred when it refused to give his proposed instruction:

> If you find that the defendant told the complaining witness that the check would not clear the bank at the time it was given, there has been no larceny.

The basis of the proposed instruction is defendant's position that a check which the payee agrees to hold until a future date[2] is equivalent to a postdated check, and a postdated

---

[2] As noted above, there is a dispute in the evidence as to whether defendant did, in fact, ask the automobile salesman to hold the check upon which count one is based. Such a factual question is ordinarily

check will not support the charge of larceny by check because it is a promise to discharge a present obligation at a future date—a credit transaction. Therefore, defendant's fraudulent intent was negatived, and there could have been no reliance by the dealer on existing funds to cover the check. Even assuming that a check which is to be held by the payee is equivalent to a postdated check,[3] defendant's statement of the law incorporated within his proposed instruction is not the law of this state.

Defendant points to Annot., 29 A.L.R.2d 1181 (1953), which reveals a division of authority on the question of whether "worthless check" statutes[4] apply to postdated checks.

Defendant argues that the basic reasons for excepting postdated checks from the "worthless check" statute likewise apply to the crime charged in the instant case. He contends that when a seller knowingly accepts a postdated check as payment for goods, there can be no present intent on the part of the buyer to commit fraud, the transaction is essentially a credit transaction, and the buyer is merely promising to have funds at a future time. In support of his position, defendant cites *Commonwealth v. Kelinson*, 199 Pa. Super. 135, 184 A.2d 374 (1962); *State v. Eikelberger*, 72

---

one for the jury. *State v. Gilmore*, 42 Wn.2d 624, 257 P.2d 215 (1953). However, the problem in the present case goes beyond the factual question because, assuming the jury resolved the factual question in favor of the defendant, the legal question of the effect of such a finding was not, according to the defendant, provided for adequately in the instructions.

[3] See 32 Am. Jur. 2d *False Pretenses* § 81 (1967).

[4] At this juncture it is appropriate to point out that the Washington "worthless check" statute is RCW 9.54.050, which provides:

Any person who shall with intent to defraud make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or depository, to meet said check, in full upon its presentation, shall be guilty of larceny. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud.

Idaho 245, 239 P.2d 1069, 29 A.L.R.2d 1176 (1951); *State v. Carr*, 160 Wash. 83, 294 Pac. 1016 (1930).

Defendant maintains that *State v. Carr, supra,* holds that the "worthless check" statute is inapplicable to postdated checks. In that case, the appeal of the accused was based on the argument that the instruction given by the trial court was incorrect solely because it made the knowledge and consent of the postdating on the part of the party receiving the check a prerequisite to a finding of guilt. The court held only that the instruction was in accordance with the accused's theory of the case.

■ There are numerous cases from other jurisdictions which support defendant's position, but we believe that the more logical approach is stated in *White v. State,* 135 Neb. 154, 158, 280 N.W. 433 (1938):

> The guilt of the defendant would be necessarily determined by his intention to defraud, whether the check is payable on demand or postdated.

The court in *People v. Westerdahl,* 316 Ill. 86, 90, 146 N.E. 737 (1925), stated:

> The fact that the check was post-dated does not take the case out of the statute. By drawing and tendering the check the purpose was presumed to be to induce the belief that it would be paid upon presentation. . . . Only upon the assumption that the check was good did the plaintiff in error obtain delivery of the new automobile. The agreement required him to pay the balance of $932.62 in money. His delivery of the check as such payment necessarily assumed the ownership of that much money on deposit to his credit in the bank. The release dated November 4, 1922, the day on which the transaction was consummated, recited the payment of that sum. We are satisfied that the automobile was delivered in reliance upon the check and not upon the personal credit of the plaintiff in error.

In *State v. DeNicola,* 163 Ohio St. 140, 144, 126 N.E.2d 62 (1955), the Supreme Court of Ohio stated:

> All the elements of fraud appear to be in the transaction between defendant and the payee of the check. It is quite clear that on November 3 the payee of the check parted with a house trailer in consideration of the de-

fendant's payment by check. The defendant knew at the time that neither he nor his corporation had any funds in the drawee bank. Even resolving the conflict in the testimony concerning knowledge of the postdating on the part of payee's agent in favor of the defendant, or conceding, as defendant contends, that the mere delivery of the postdated check was constructive knowledge that there were no funds in the bank at the time, the delivery of the check by the defendant was a representation by him to the payee that there *would be* funds in the bank on the day the check was dated.

In addition, defendant was prosecuted under the larceny by check statute, RCW 9.54.010(2), rather than the "worthless check" statute, RCW 9.54.050. The question before this court, therefore, is whether the former statute is broad enough to encompass the activities with which defendant is charged and if so, whether the court adequately instructed the jury. 32 Am. Jur. 2d *False Pretenses* § 19 (1967).[5]

*State v. Spitko,* 2 Conn. Cir. 99, 195 A.2d 577 (App. Div. 1963), involved a prosecution for larceny by check under a statute very similar to RCW 9.54.010(2). The court noted that the statute had two distinct sections. One dealt with the obtaining of another's property by means of a false token, pretense, or device with intent to defraud; the second penalized the obtaining of another's property by means of a check or order for the payment of money when the defendant knows he is not entitled to make such drawing. The court found no error in the charge or the conviction under the second section of the statute, even though the check was postdated, and the defendant argued that there was no misrepresentation of a past or existing fact which would bring him within the purview of the false pretenses statute.

In the present case, it was charged in the words of the first part of RCW 9.54.010(2) that:

---

[5]RCW 9.54.010(2) has been applied in many cases in which a worthless check is used to obtain money or property. *State v. Kontrath,* 61 Wn.2d 588, 379 P.2d 359 (1963); *State v. Evans,* 57 Wn.2d 288, 356 P.2d 589 (1960); *State v. O'Dell,* 46 Wn.2d 206, 279 P.2d 1087 (1955); *State v. Gilmore,* 42 Wn.2d 624, 257 P.2d 215 (1953); *In re Dobson v. Cranor,* 39 Wn.2d 174, 235 P.2d 164 (1951).

Jack Etheridge . . . with intent to deprive and defraud the owner thereof, did willfully, unlawfully and feloniously obtain from the owner . . . merchandise of a value in excess of $25.00 . . . by means of color and aid of a check and draft and an order for the payment and delivery of property or money knowing that the maker and drawer of such check, draft and order was not authorized and entitled to make and draw said check, draft and order; . . . .

The jury was correctly instructed in the words of the statute that in order to convict the defendant of the crime charged they must find beyond a reasonable doubt that defendant obtained certain personal property of a value in excess of $25; that the property was obtained by color or aid of an order for payment of money, or by check or draft; that the property was obtained with the intent to deprive and defraud the owner thereof; that the defendant knew that the maker or drawer of said check, draft or order was not entitled to make or draw the check, draft or order.

Defendant's proposed instruction is not a correct statement of the law because it would have directed the jury to find the defendant not guilty if they found that he told the complaining witness there were not sufficient funds in the bank in order that the check might be immediately honored. Under such an instruction it would be impossible to convict a defendant, notwithstanding the fact that at the time he passed the check he presently intended to dishonor the check and defraud the dealer. The fact that defendant requested the salesman to hold the check because there presently were insufficient funds in his bank account to cover the check is only one factor which a jury might consider on the issue of whether defendant committed the act with the requisite fraudulent intent.

Whether one intended, at a specified time, to defraud another of his property is a question of fact to be resolved by the trier of facts. *State v. Bryant,* 73 Wn.2d 168, 437 P.2d 398 (1968); *State v. Smithers,* 67 Wn.2d 666, 409 P.2d 463 (1965); *State v. Konop,* 62 Wn.2d 715, 384 P.2d 385

(1963). The court submitted the issue of defendant's intent to the jury under proper instructions.

■ Defendant further contends that because the jury could have found that the car salesman agreed to hold the check until a future date there could be no reliance on the check, and therefore, his proposed instruction should have been given. Even if we had not already decided that defendant's proposed instruction was improper because it would have removed the question of fraudulent intent from the jury, defendant's argument would be without merit. The court gave instruction No. 10:

> In order to sustain the burden of proving the charge here brought, the state must prove beyond a reasonable doubt that the complaining witness was induced to part with personal property in reliance upon a check given by the defendants.

This instruction adequately instructed the jury on defendant's theory of the case. The refusal to give a requested instruction is not error when the subject matter is adequately covered in the court's other instructions. *State v. Hopkins*, 71 Wn.2d 10, 426 P.2d 496 (1967); *State v. Holbrook*, 66 Wn.2d 278, 401 P.2d 971 (1965); *State v. Evans*, 57 Wn.2d 288, 356 P.2d 589 (1960).

Error is assigned to the failure of the trial court to grant a directed verdict in defendant's favor or to dismiss the prosecution on defendant's challenge to the sufficiency of the evidence. This assignment is without merit.

■ A challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the challenge is made and all inferences that can reasonably be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger and in the light most favorable to the opposing party. *State v. Woody*, 73 Wn.2d 179, 437 P.2d 167 (1968), and the cases cited therein.

Viewing the evidence as required would support the following factual determinations: Defendant requested the automobile salesman to hold only two of the checks and said nothing with respect to the one upon which this prose-

cution is based. Defendant knew at the time he delivered the check that he had grossly insufficient funds in his account and intended from the beginning to purchase an automobile with a worthless check, which he would never make good. The salesman would not have delivered defendant the automobile except for the delivery of the check as payment.

Defendant's second major contention is that the trial court committed error when it failed to find that the requested out-of-state witnesses were material to the defense, and failed to certify and request their attendance in accordance with RCW 10.55.060.[6]

Defendant testified that he had recently arrived from Virginia where he had run a business which he had sold, and that he was expecting payment of $15,000 at the time he purchased the station wagon. It was with this money that he expected to deposit enough money to cover the check which the automobile salesman agreed to hold. Defendant sought to introduce exhibit 13, a copy of the bill of sale, which stated a consideration of $1, but the court ruled it inadmissible because the buyer had not executed the copy, and defendant testified he did not know if the original had ever been signed. Defendant also said there was a note for $15,000 which the buyer was to have executed.

The affidavit filed in support of the motion to compel three out-of-state witnesses to attend stated only the belief that their testimony would be material. The court ruled that there was an insufficient showing of materiality by the

---

[6]RCW 10.55.060 provides in part: "If any person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, *is a material witness* either for the prosecution or for the defense, in a criminal action pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of such court *may issue a certificate* under the seal of the court stating these facts and specifying the number of days the witness will be required. Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found." (Italics ours.)

defendant. During trial, defendant renewed his motion and it was again denied. The court did allow defendant's counsel to telephone one of the desired witnesses, defendant's agent, for the purpose of the sale, and she said she had no knowledge of a promissory note. The attorney who handled the Virginia transaction was also called, and he said he had prepared a bill of sale and a promissory note for defendant, but did not know if they were ever executed since someone had picked them up and he never saw them again.

■ It is obvious from an examination of the words of the statute which are italicized that the issuance of a certificate to compel the attendance of out-of-state witnesses is not mandatory upon the court. *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968). We are in agreement with the courts of other jurisdictions which have held that the granting or denying of a motion under such a statutory provision is largely discretionary with the trial court. The person requesting court assistance in procuring witnesses has the burden of establishing to the satisfaction of the court that the witnesses are material. The mere assertion that witnesses are material is insufficient. *People v. Newville,* 220 Cal. App. 2d 267, 33 Cal. Rptr. 816 (1963); *People v. Nash,* 36 Ill. 2d 275, 222 N.E.2d 473 (1966), *cert. denied,* 389 U.S. 906, 19 L. Ed. 2d 223, 88 Sup. Ct. 222 (1967); *Midgett v. State,* 223 Md. 282, 164 A.2d 526 (1960), *cert. denied,* 365 U.S. 853, 5 L. Ed. 2d 817, 81 Sup. Ct. 819 (1961); *State v. Blount,* 200 Ore. 35, 264 P.2d 419, 44 A.L.R.2d 711 (1953), *cert. denied,* 347 U.S. 962, 98 L. Ed. 1105, 74 Sup. Ct. 711 (1954); *State v. Fouquette,* 67 Nev. 505, 221 P.2d 404 (1950), *cert. denied,* 341 U.S. 932, 95 L. Ed. 1361, 71 Sup. Ct. 799 (1951); *State v. Smith,* 87 N.J. Super. 98, 208 A.2d 171 (1965).

In light of defendant's failure to show the trial court the materiality of the testimony to be elicited from the witnesses who were sought from out of state, we cannot find any abuse of discretion on the part of the trial court.

We come now to the third major issue raised in this appeal. Error is assigned to the evidence elicited from defendant on cross-examination concerning the use of credit cards issued in the names of third persons. Defendant ar-

gued to the trial court, and contends here, that the evidence was inadmissible because it was evidence of another crime, forgery, for which defendant had not been charged, and the only purpose of the prosecutor's use of the evidence was to inflame the jury. The court overruled the objection and denied defendant's motion for a mistrial.

Evidence of flight and concealment is recognized as admissible evidence as a circumstance which may be considered by the jury in determining guilt or innocence. *State v. Bruton*, 66 Wn.2d 111, 401 P.2d 340 (1965); *State v. Gellerman*, 42 Wn.2d 742, 259 P.2d 371 (1953); *State v. Moser*, 37 Wn.2d 911, 226 P.2d 867 (1951); *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946); *State v. Lew*, 26 Wn.2d 394, 174 P.2d 291 (1946).

Defendant argues that he admitted flight and concealment by admitting the circumstances of the trip to Montana. We do not agree. The whole import of defendant's testimony on direct examination concerning the trip to Montana was that he and his wife were on a legitimate business trip, with no intention to conceal themselves or to flee. He also testified on direct examination that he was "responsible" for the credit cards. The cross-examination was admissible to explain, qualify and rebut defendant's direct testimony on subjects which he had already introduced to the jury. The scope of cross-examination is within the discretion of the trial court. A defendant cannot complain of limited cross-examination on issues which he introduced to the jury. *State v. Robinson*, 61 Wn.2d 107, 377 P.2d 248 (1962); *State v. King*, 58 Wn.2d 77, 360 P.2d 757 (1961). A defendant may be cross-examined in the same manner as any other witness if he voluntarily asserts his right to testify. *State v. Robideau*, 70 Wn.2d 994, 425 P.2d 880 (1967); *State v. Putzell*, 40 Wn.2d 174, 242 P.2d 180 (1952); *State v. Jeane*, 35 Wn.2d 423, 213 P.2d 633 (1950).

We find no error. The judgment is affirmed.

FINLEY, C. J., ROSELLINI, HALE, and McGOVERN, JJ., concur.

September 3, 1968. Petition for rehearing denied.