[No. 1935-2. Division Two. February 16, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDREW DENNIS, ET AL, *Appellants*.

PETRIE, C.J., concurs in the result only.

*John M. Rosellini* and *Rosellini & Rosellini*, for appellants.

*John Merkel, Prosecuting Attorney*, and *Richard B. Jones, Deputy*, for respondent.

HALE, J.*—Defendants, Andrew Dennis and Marilyn Barnes, cashed a number of checks with insufficient funds on deposit, three of them in Kitsap County. The Prosecuting Attorney for Kitsap County filed an information charging them under RCW 9.54.010(2), with three felony counts of grand larceny in obtaining money by means of trick, device, or bunco, or by false or fraudulent representation in cashing the checks. On appeal, defendants contend they were entitled to an instruction on petit larceny as a lesser included offense as embodied in the unlawful issuance of

---

*Judge Frank Hale is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

bank check statute, RCW 9.54.050. This lesser included offense point is the sole issue raised on appeal from a judgment entered on a verdict of guilty on all three counts.

From the evidence a jury could believe that Andrew Dennis and Marilyn Barnes were friends; that Dennis, as owner of Westland Cedar Products, lived and maintained his business office at Union on Hood Canal. Mrs. Barnes resided at Port Orchard. Mr. Dennis bought cedar logs and blocks from which he manufactured shakes and other cedar products at his cedar mill. He had to have a supply of cash on hand in the conduct of his business, he said, because a good many of his cedar suppliers would not accept checks for their cedar logs or blocks.

On January 11, 1975, Andrew Dennis and Marilyn Barnes drove to Burien, near Seattle, a few hours by automobile from Union and Port Orchard. There, as sole signators, they opened a bank account in the name of Westland Cedar Products at the Continental Bank of Burien with a $20 deposit, giving the company's correct business address. Then a few days later, on January 16, they deposited $400, raising their total Continental Bank of Burien deposit to $420. Mrs. Barnes received from the bank a starter book of 15 checks which she numbered consecutively backwards from 4999 to 4985. Defendants made a final deposit in the Continental Bank of Burien account on January 22, 1975, in the amount of $214.50, bringing the total Westland Cedar Products' deposits in the Continental Bank of Burien to $634.50.

As to the cashing of checks drawn on the Westland Cedar Products' account, there was little dispute. Lloyd Klaudt, manager, and Karen Cade, a teller at the Kitsap County Bank, East Bremerton Branch, testified that between 3 to 4 p.m. on January 21, the teller cashed a $200.25 check (No. 4993), for defendant Dennis, giving him cash. This check was later returned to the Kitsap County Bank at East Bremerton for nonpayment and had not been redeemed to the time of trial.

Betsy Van Winkle, a teller at the Kitsap County Bank in

Port Orchard, said that on January 22 she cashed check No. 4997, drawn on the Continental Bank of Burien in the sum of $235.32, for the defendant Dennis. Before handing him the money she says she asked him if he had an account with her bank (Kitsap County Bank in Port Orchard), and he replied that he did. She made no further inquiry and gave him the money for the check, which was subsequently dishonored by the Continental Bank of Burien.

Sharon Oliver, also a teller at the Port Orchard Branch of the Kitsap County Bank, testified that on January 21, the defendant Dennis presented a $200.25 check drawn on the Continental Bank of Burien, and when he said he did not have an account with their bank she referred him to Mr. Richard Fulton, a bank officer. Mr. Fulton approved the check, No. 4995, and the bank then cashed it for the defendant, giving him the money. Mr. Fulton said that when Dennis presented it to him for approval, he immediately phoned the Continental Bank of Burien upon which it was drawn, and was told there were sufficient funds on deposit there to cover it. This check, the second one cashed by the Port Orchard Branch, Kitsap County Bank, was dishonored for insufficient funds and to the time of trial remained unpaid.

The three counts in the information relate to these three checks. Transactions involving other checks were also shown to the jury.

Marian Gavigan, assistant manager of the Gig Harbor Branch, Pacific National Bank of Washington, testified that on January 22, 1975, her branch cashed defendant's check No. 4994 in the amount of $200.25 which was returned marked NSF, signifying insufficient funds, and that they thereupon demanded payment from Mr. Dennis who, in response, redeemed the check for cash on February 21. Mrs. Gavigan had approved the check for cashing because, as she put it, somewhere in their bank system Dennis had an installment loan.

Phyllis Michaelis, manager of the Peninsula State Bank at Purdy, testified that on January 22, around 1 p.m., she

cashed check No. 4998 at her bank in the amount of $235.32, with which he opened a checking account, depositing $110.32 and taking $125 in cash. Before cashing the check she called the Continental Bank of Burien and was told there were sufficient funds on deposit to cover it. This check was returned to the Peninsula State Bank at Purdy on January 29 for insufficient funds (NSF) and sent to the Continental Bank of Burien for collection. On February 10 it was returned by Continental with the notation "Account closed."

Shirley Pogreba, assistant manager of the Shelton Branch, Seattle-First National Bank, testified that on January 22, she cashed a $235.32 check at her bank payable to Andrew Dennis, signed by Marilyn Barnes, and drawn on the same bank account. This check, No. 4996, was subsequently returned to the Shelton Branch with the notation "Account closed." Mr. Dennis later picked this check up by paying cash to the bank for it on February 11, after demand by the bank made to him on February 7.

All six of the dishonored checks were drawn by defendant Marilyn Barnes.

Mr. Dennis H. Daugs, vice-president-manager of Continental Bank of Burien, gave a summary of the defendants' Westland Cedar Products account. He said both defendants opened the account on January 11, 1975, with a $20 deposit, added to it on January 16 with a $400 deposit, and a $214.50 deposit on January 22, bringing the total amount deposited to $634.50. Two checks drawn against this account were cashed at the Continental Bank of Burien: a $200 check on January 22 and a $250 check on January 23, for a total of $450. Six other checks drawn on the account were presented for payment and were dishonored because there were insufficient funds in the defendants' account with which to pay them.

In summary, of the six checks not paid, three were for $200.25 and three for $235.32. Thus the jury could find that during a comparatively short interval, the defendants, at various banks located within a few hours' driving time of

each other, cashed $1,306.71 worth of checks plus the two other checks totaling $450, all against a total deposit of $634.50. Stated otherwise, defendants were shown to have deposited a total of $634.50 in a checking account with the Continental Bank of Burien between January 11, 1975, and January 22, 1975. And between January 21, 1975, and January 23, 1975, at various banks within a few hours' driving time they cashed eight separate checks on the account for a total of $1,756.70, as follows:

| Transaction Date | Check Number | Locations Where Checks Were Cashed | Amount of Deposit | Amount of Check |
|---|---|---|---|---|
| DEPOSITS: | | | | |
| 1/11/75 | | | $ 20.00 | |
| 1/16 | | | 400.00 | |
| 1/22 | | | 214.50 | |
| | | Total Deposits | $634.50 | |
| CHECKS HONORED: | | | | |
| 1/22 | 4992 | Continental Bank of Burien | | $200.00 |
| 1/23 | 4990 | Continental Bank of Burien | | 250.00 |
| | | Total Checks Honored | | $450.00 |
| 1/24 to 1/31 | | Miscellaneous Check & Bank Charges | | 45.47 |
| | | Account closed & balance returned to defendant Dennis. | | 139.03 |
| | | Total Debits | | $634.50 |
| CHECKS DISHONORED: | | | | |
| 1/21 (Count 1) | 4993 | East Bremerton | | 200.25 |
| 1/21 (Count 3) | 4995 | Port Orchard | | 200.25 |
| 1/22 (Count 2) | 4997 | Port Orchard | | 235.32 |
| 1/22 | 4994 | Gig Harbor | | 200.25 |
| 1/22 | 4996 | Shelton | | 235.32 |
| 1/22 | 4998 | Purdy | | 235.32 |
| | | Total Checks Dishonored | | $1,306.71 |
| | | Total Checks Written & Dishonored | | $1,756.71 |

On February 7, 1975, the Continental Bank of Burien closed defendants' account, and after making deductions for some small miscellaneous checks and NSF charges, returned $139.03 to Dennis at his Union address. No single check cashed by the defendants within a 3-day period exceeded the total amount then on deposit in their account; nor did they cash more than one check at any single banking location.

As mentioned earlier, the sole issue on appeal is whether

the court should have given defendants' two proposed instructions covering the offense of unlawful issuance of bank checks, as a lesser included offense under RCW 9.54.050. Before imposition of sentence, restitution was made to the bank and each defendant was granted a deferred sentence subject to probation.

The three counts of the information in this case were charged under RCW 9.54.010(2), a section of the general larceny statute which denounces the obtaining of money or property by means of trick, device, bunco, or by false or fraudulent representations, or by color or aid of any order for the delivery of property or payment of money, or by check or draft. Defendants urge that the jury should have been permitted to consider the lesser included offense of unlawful issuance of bank checks, a gross misdemeanor, covered by RCW 9.54.050, which reads:

> Any person who shall with intent to defraud make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or depository, to meet said check, in full upon its presentation, shall be guilty of larceny. The word "credit" as used herein shall be construed to mean an arrangement or understanding with the bank for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud.

Petit larceny under RCW 9.54.010(2), *supra*, becomes grand larceny when property of the value of more than $75 is received in any manner whatsoever. RCW 9.54.090. All checks involved in this information were for more than $200.

As a general rule, when an information or indictment charges an offense which includes within it another lesser offense, or one of lower degree, the defendant, although acquitted of the higher offense, may be convicted of the lesser; or he may be convicted of the greater offense without regard to the lesser offense; or he may be convicted of

an attempt to commit the offense charged. This general rule, including a reference to attempts, is embodied in the statutes of the state. RCW 10.61.003; RCW 10.61.006. When the evidence falls short of proving the offense charged, the State may have the lesser included offense or an attempt to commit the crime charged submitted to the jury where the evidence warrants; and the accused, where the evidence warrants, may have a lesser included offense submitted to the jury along with the greater offense charged.

▪ Defendants argue that they could not possibly have committed the offense charged under RCW 9.54.010(2) without having committed also the crimes of unlawful issuance of bank checks in violation of RCW 9.54.050. This argument, however ingenuous, does not fully apply all of the principles developed in a number of cases in this jurisdiction for identifying a lesser included offense. More is usually required than a showing that the two crimes are similar, or that in proving the offense charged the State inevitably proved the lesser. What the court must look for in ascertaining the existence of a lesser included offense is an identity of elements between the two, as established mainly by definition in the criminal code, and often with reference to the particular evidentiary facts.

Recently the Supreme Court of the state passed on a similar point. In *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973), the issue was double jeopardy, a principle closely related to the lesser included offense doctrine. There the accused had been charged in the police court of Pasco, a city in Benton County, with a violation of Pasco municipal code 9.24.010, prohibiting the carrying of a concealed pistol. While that charge was pending, the prosecuting attorney of Benton County filed an information in the Superior Court charging the accused with the ownership, possession, and control of a pistol after having been convicted of a crime of violence in violation of RCW 9.41.040. Both of these charges arose out of the same transaction and incident.

Defendant Roybal entered a plea of guilty to the Pasco

police court charge, pleaded not guilty to the superior court felony charge, and moved to dismiss the latter on the ground of double jeopardy. Pointing out that there existed a difference between the two offenses, because each offense contained an element not included in the other, *i.e.*, under the city ordinance, concealment must be proven, but not under the statute; and under the statute prior coviction of a crime of violence must be proven, but not under the Pasco municipal code. The court in *Roybal* then went on to lay down the general rules for identifying a lesser included offense, stating at pages 582-83:

> Likewise the municipal charge of concealing a weapon is not a lesser included offense in the state charge. A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. *State v. Bishop*, 6 Wn. App. 146, 491 P.2d 1359 (1971). . . . The element of concealment is not an essential ingredient of the state charge and the defendant could have committed the greater offense without committing the lesser.

In *State v. Waldenburg*, 9 Wn. App. 529, 513 P.2d 577 (1973), defendant, as in the instant case, was charged with two counts of grand larceny under RCW 9.54.010(2), in the sale of two automobiles by fraudulent and false representations, or in the alternative by trick or device; and in two other counts, involving the same transactions, with misdemeanors under RCW 46.37.550, for selling two motor vehicles knowing that the odometers had been turned back without so notifying the buyer. The jury found defendant guilty on all four counts, *i.e.*, a felony and a misdemeanor as to each of the two cars sold. On the issue of double jeopardy, but expressing views applicable also to the lesser included offense principle, the court in *Waldenburg* said at pages 531-32:

> It is possible for one to be found guilty of violating RCW 46.37.550 [setting back the odometer] without having entertained any intention to defraud a buyer and/or without the buyer having relied upon the mileage then appearing upon the odometer in making his automobile

purchase. Thus, we find that there are distinct elements differentiating the two statutes.

Similarly it has been held in this jurisdiction that the crime of abduction, which prohibits the taking of a female under the age of 18 for the purpose of sexual intercourse, as prohibited by RCW 9.79.050(1), is not a lesser included offense to either kidnapping in the first degree as charged under RCW 9.52.010(1), or assault in the second degree with intent to commit rape, as charged under RCW 9.11.020(6). *State v. East*, 3 Wn. App. 128, 474 P.2d 582 (1970). *Accord, State v. Harp*, 13 Wn. App. 239, 534 P.2d 842 (1975).

In *State v. Saylors*, 70 Wn.2d 7, 422 P.2d 477 (1966), defendant, convicted of taking a motor vehicle without the owner's permission, as charged under RCW 9.54.020, a felony punishable by a maximum of 10 years' imprisonment, claimed an irreconcilable conflict with the general grand larceny statute, RCW 9.54.010, which provides for a maximum of 15 years. Pointing out that the two offenses were not the same, the court said at page 11:

> We can admire the adherence to principle that makes a man prefer a 15-year maximum sentence under what he considers a constitutional statute, to a 10-year maximum under one which he believes to be unconstitutional. However, we hasten to assure him that RCW 9.54.020 does not conflict with 9.54.010, and that it is constitutional. We have heretofore pointed out that larceny is not essential to an offense under RCW 9.54.020 (taking a motor vehicle without permission); *State v. Nelson*, 63 Wn.2d 188, 386 P.2d 142 (1963); *State v. Daniels, supra*; and that taking an automobile without the permission of the owner is different than larceny. *In re Arquette v. Schneckloth*, 56 Wn.2d 178, 351 P.2d 921 (1960).

Again citing *Saylors*, the court in *State v. Franks*, 74 Wn.2d 413, 445 P.2d 200 (1968), made it clear that taking a motor vehicle without the permission of the owner under RCW 9.54.020 differs from larceny because it does not require proof of a specific intent to permanently deprive the owner of anything, whereas intent to permanently deprive the owner of his property is an element of larceny.

For the same reasons, where the defendant in *State v. Snider*, 70 Wn.2d 326, 422 P.2d 816 (1967) was charged with robbery in forcibly taking a billfold and a wristwatch from the complaining witness, and there was evidence that the accused was observed during a fight with some money and a wallet in his hand and the victim on the ground, the accused was not entitled to an instruction on the lesser offense of larceny from the person.

■ The two crimes arising from the fraudulent issuance of bank checks by definition have different elements. According to RCW 9.54.050, the so-called bad check statute, the offense is complete with the drawing and delivery of the check, or in some instances where the drawer and the utterer are different persons, with the delivery of the check. The gravamen of the crime defined by RCW 9.54.050 is the knowing issuance of a bad check; and nothing of value need be obtained for it. Therefore, in a prosecution for issuance of a bad check under RCW 9.54.050, the State need not prove as an element of the crime that something of value was obtained for the check. *Sorenson v. Smith*, 34 Wn.2d 659, 209 P.2d 479 (1949); *Campbell v. Cranor*, 35 Wn.2d 938, 212 P.2d 1019 (1949); *State v. Bradley*, 190 Wash. 538, 69 P.2d 819 (1937).

Under the general larceny statute, RCW 9.54.010(2), however, from which the three counts of the information in this case were drawn, one of the elements of the crime is that something of value be received or procured or obtained for the check. For example, in *State v. Scherer*, 77 Wn.2d 345, 462 P.2d 549 (1969), at 349-50, it is said:

> The worthless check statute punishes the issuer of a bad check, even though he has obtained no goods in exchange for it. The crime is petit larceny. *See In re Sorenson v. Smith*, 34 Wn.2d 659, 209 P.2d 479 (1949). The only essential difference between the crime defined in that statute and the crime defined in RCW 9.54.010(2) is that, under the latter, the *obtaining of property* by color or aid of a worthless check is an element.

This distinction between the so-called bad check offense under RCW 9.54.050 and the general larceny statute, RCW

9.54.010, was earlier made clear in *State v. Bradley, supra* at 546:

> the gist of the statutory offense here in question being in drawing or delivering, with fraudulent intent, a check, knowing that no funds are on deposit to pay the same. *The statute* [RCW 9.54.050] *contains no provision to the effect that any property must be procured on or for the check.* Such an offense is covered by another section of the criminal code.

(Italics ours.) And in *Jeane v. Smith*, 34 Wn.2d 826, 210 P.2d 127 (1949), the court adopted the above quotation at page 828, and went on to say: "In this it differs from the forms of larceny defined in [RCW 9.54.010], all of which require that something be procured."

Differences between the bad check statute, RCW 9.54.050, and the general larceny by check statute, RCW 9.54.010(2), were again noted in *Persinger v. Rhay*, 52 Wn.2d 762, 329 P.2d 191 (1958). There, petitioner in habeas corpus had been convicted under an information charging him with the felony of grand larceny by means of a check in violation of RCW 9.54.010(2). The information alleged, without stating the value or amount, that merchandise and money had been received for a $40 check. Relying mainly upon the principles of *Sorenson v. Smith, supra*, the court in *Persinger* said at pages 767-68:

> If the value of the property obtained by a bad check is alleged in the information to be more than twenty-five dollars, the crime is grand larceny and a felony. RCW 9.54.090(5).
>
> The allegation in the present case was that the defendant by uttering a check, calling for the payment of forty dollars, "did receive money and merchandise therefor."
>
> No value was placed on the . . . "money and merchandise" in the present case.

*Persinger* accordingly held that the information, because it did not specify the value of the property obtained, charged a misdemeanor and not a felony under the general larceny statute. As the court pointed out, the misdemeanor denounced by the "bad check" statute, RCW 9.54.050, is com-

plete with the making, uttering, or delivery of the check and nothing of value need be obtained for it.

It is the drawing of the worthless check and not the obtaining of something of value which violates the bad check statute, RCW 9.54.050. *State v. Bradley, supra; Sorenson v. Smith, supra; Jeane v. Smith, supra.* Contrarily, it is the obtaining of property or money by color or aid of a worthless check that characterizes the larceny statute, RCW 9.54.010(2); *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968); *State v. Kontrath,* 61 Wn.2d 588, 379 P.2d 359 (1963); *State v. Evans,* 57 Wn.2d 288, 356 P.2d 589 (1960).

The judgment is accordingly affirmed.

PRICE, J. Pro Tem., concurs.

PETRIE, C.J., concurs in the result.