[No. 8067–9–I.   Division One.   December 8, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES HERMON GOODLOW, *Appellant*.

*Lewis H. Nomura* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jerry Stimmel, Deputy,* for respondent.

WILLIAMS, J.—Charles Hermon Goodlow was charged by information with one count of second degree theft, RCW 9A.56.040(1)(a) and RCW 9A.56.020(1)(b) and four counts of forgery, RCW 9A.60.020(1)(a) and (b). In a trial to the court with a jury, he was found guilty as charged. His assignments of error concern the sufficiency of the evidence to support the convictions, and whether the information violated the double jeopardy clause of the United States Constitution. U.S. Const. amend. 5, cl. 2. We affirm.

The events leading up to the convictions of Goodlow, all occurring in February 1979, are these: Fidelity Mutual Savings Bank sold four cashier's checks made payable to Charles Hermon Goodlow to one or more unidentified customers. These checks were presented to be cashed at various Seattle banks with the amounts of two of them increased from $3 to $300, one from $5 to $500 and one from $8 to $866.06.

At trial, James Burton, a loan officer at Liberty Bank in Seattle, testified that a man presented one of the $300 Fidelity checks for payment. The witness could not identify

Goodlow as the man who presented the check but did state that the person showed him Goodlow's driver's license and that he wrote the license number on the back of the check. Goodlow's driver's license with his picture on it was admitted as an exhibit and identified by Burton as the one shown to him when he cashed the $300 check.

Geneva Tanner, manager of a department in a Seattle–First National Bank branch, testified that she approved the cashing of the other $300 Fidelity check and identified Goodlow as the man who presented it for payment.

Mary Kay Walkley, a teller at a Seattle–First National Bank branch, testified that she could not recall who presented the $500 Fidelity check for payment, but she did know that Goodlow had been in the bank. Goodlow's driver's license number is on that check.

Linda Simon, a customer service representative at Pacific National Bank, testified that she opened a savings account for Charles Goodlow on February 20, 1979. The next day, February 21, someone presented the $866.06 Fidelity check at the drive–up teller window of the bank. The teller, Darrell Wood, testified that he asked the person if he had an account at the bank and was told that he did. The man then gave Wood the number of Goodlow's savings account. Wood took the check to an officer who disapproved it because it was altered, the person then left without being paid.

Goodlow contends that there is insufficient evidence to convict him of the forgery counts. He argues that there was no evidence to show that he was the individual who presented the $500 and $866.06 checks and the first of the $300 checks. He also argues that the State did not prove that he had the intent to commit forgery simply because he presented altered checks.

■ The standard for determining if there is sufficient evidence to support a criminal conviction is:

[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). *Accord, State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

The evidence adduced at trial meets that standard. There was direct evidence by Geneva Tanner that Goodlow presented one of the $300 checks. There was identification through Goodlow's driver's license and the use of his savings account number.

■ Evidence of crimes not charged in an indictment or information may be introduced, at the trial court's discretion, to show a common scheme or plan. *State v. Hess,* 86 Wn.2d 51, 52, 541 P.2d 1222 (1975). The jury could find the four forgeries were carried out as part of a common scheme or plan. *See, e.g., State v. Johnson,* 56 Wn.2d 700, 355 P.2d 13 (1960). Thus, identification evidence as to one forgery will tend to establish identification as to all. The positive identification of Goodlow on one occasion, along with the driver's license and bank account numbers on the checks, could convince any rational trier of fact that Goodlow presented the checks beyond a reasonable doubt. *Jackson v. Virginia, supra.*

Goodlow also contends that the mere proof that altered checks were presented does not establish that the presenter knew they were forged. We disagree. The method employed was the same each time; raise a cashier's check of a small amount to a much higher figure and then cash it at a bank other than the one issuing it. Two different forms of identification were used. Three times the presenter was paid the higher amount. No money was paid on the fourth, $866.06, because the presenter left the bank when the check was taken to an officer to be approved for payment. Taking all of these circumstances into account, a rational trier of fact could determine beyond a reasonable doubt that the presenter, found to be Goodlow, knew the checks were forged. *Jackson v. Virginia, supra.*

■ As to Goodlow's double jeopardy contention, Washington adheres to the "same evidence" analysis to determine whether conviction of two offenses violates the double jeopardy clause. *See State v. Morlock,* 87 Wn.2d 767, 557 P.2d 1315 (1976). Goodlow was charged with one count of second degree theft (RCW 9A.56.040(1)(a) and RCW 9A.56.020(1)(b)) and four counts of forgery (RCW 9A.60-.020(1)(a) and (b)). A second degree theft conviction requires proof that the defendant actually gained control of the property. That element need not be proven to convict a defendant of forgery. Accordingly, identical evidence will not support a conviction for both second degree theft and forgery. *See State v. Dennis,* 16 Wn. App. 939, 561 P.2d 219 (1977).

The judgment is affirmed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied February 4, 1981.