[No. 6235-0-III. Division Three. July 9, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. MARGARET M. BOYANOVSKY, *Appellant.*

*Kenneth L. Jorgensen,* for appellant (appointed counsel for appeal).

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

GREEN, C.J.—Margaret Boyanovsky was charged and convicted of three counts of unlawful issuance of checks. Her appeal raises two questions: (1) Must the drawer of a bad check obtain property in order to be convicted of a felony? and (2) Was the evidence sufficient to support a finding she intended to defraud? We affirm.

Mrs. Boyanovsky operated Hallmark Tours, a travel agency for senior citizens. As part of her business, she scheduled a January 1983 tour of Hawaii for a group of 15. When some members of the group could not go, she was forced to cancel the tour. The remaining group members were advised of the cancellation and told their refunds would be forthcoming. Except for one customer, she refunded only a portion of the moneys. When customers inquired about their refund, Mrs. Boyanovsky falsely blamed others for the delay, *e.g.,* she was waiting for a refund from the airline and also from the hotels and motels. The record shows she had not paid any money to the airline nor had she paid for accommodations. Instead, the moneys she received for the tour had been commingled with other moneys. The evidence shows a history of overdrafts from the inception of her business until her accounts were closed by the banks.

Mrs. Boyanovsky tried to borrow money, without success. She sought an investor, but he declined to invest when he learned his investment had to be used to pay existing debts. Finally, in April 1983, after being pressed for payment, Mrs. Boyanovsky sent postdated refund checks to four of the tour members in the amounts of $150, $925, $1,025, and $2,150. Enclosure letters indicated she expected to have refunds from hotels and airlines by the dates of each check. In fact, there were no expected refunds from this tour and she did not have funds in the bank or otherwise to pay the checks; she merely hoped to raise the money before the checks became payable. She was unable to do so. Trial to the court resulted in three felony and one gross misdemeanor convictions of unlawful issuance of bank checks.

First, Mrs. Boyanovsky contends the drawer of a bad check who obtains no property thereby has not committed a felony, but only a gross misdemeanor. As a result, the penalty to be imposed on all counts should not exceed the penalty for commission of gross misdemeanors. Therefore, she argues, the court erred in sentencing her based on the three felony convictions. She supports this contention by citing cases construing former criminal statutes.

It is true former RCW 9.54.010 and .050 (Rem. Rev. Stat. § 2601 and § 2601–2) treated the unlawful *issuance* of a check in any amount as larceny, a gross misdemeanor. Only where property was obtained by aid of a bad check and the value of that property exceeded $25 was the offense elevated to grand larceny, a felony. RCW 9.54.090 (Rem. Rev. Stat. § 2605). *Moon v. Cranor,* 35 Wn.2d 230, 212 P.2d 775 (1949); *Sorenson v. Smith,* 34 Wn.2d 659, 209 P.2d 479 (1949); *State v. Bradley,* 190 Wash. 538, 69 P.2d 819 (1937); *State v. Dennis,* 16 Wn. App. 939, 561 P.2d 219 (1977); *State v. Wilder,* 12 Wn. App. 296, 529 P.2d 1109 (1974). Thus, she asserts since the checks she issued were given for a preexisting debt there was no property of value involved and the offense, if any, was a gross misdemeanor. Reliance upon these *former* statutes and decisions construing them is misplaced.

■ Here, Mrs. Boyanovsky was charged under the *new* "bad check" statute, RCW 9A.56.060:

> (1) Any person who shall with intent to defraud, make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or other depository, to meet said check or draft, in full upon its presentation, shall be guilty of unlawful issuance of bank check. . . .
>
> . . .
>
> (4) Unlawful issuance of a bank check in an amount greater than two hundred fifty dollars is a class C felony.

(5) Unlawful issuance of a bank check in an amount of two hundred fifty dollars or less is a gross misdemeanor . . .

Unlike the former grand larceny statute, unlawful issuance of a check is a felony or a gross misdemeanor based only on the amount of the check. This distinction was noted in *State v. Meyer*, 26 Wn. App. 119, 123, 613 P.2d 132 (1980): "[T]he writing of a bad check is no longer described as 'larceny,' and the general definition of theft no longer mentions checks, as did RCW 9.54.010(2) and .090(5)." The gravamen of the offense under the current statute is the issuance of a check knowing there are insufficient funds in the bank to pay it with an intent to defraud. Receipt of property is not an element of the offense under the new statute. There was no error.

■ Second, Mrs. Boyanovsky contends the court erred in finding she intended to defraud her customers by the issuance of postdated checks. The nature of an intent to defraud by means of worthless paper was described in *State v. Bradley, supra* at 546–47:

> The delivery of the check might maintain the drawer's credit for a limited period of time; it would doubtless, in most cases, lead the payee to believe that his claim had, in fact, been paid; and the act would give the payee of the check a feeling of security. The delay procured by the turning over of worthless paper may support a finding that intent to defraud existed within the meaning of the statute.

That case involved the unlawful issuance of postdated checks under circumstances remarkably similar to the case at bench. *See also State v. Etheridge*, 74 Wn.2d 102, 107, 443 P.2d 536 (1968) (intent to defraud may be found whether check is payable on demand or postdated).

Viewing the evidence in a light most favorable to the State, as we must do, the record shows that over a period of time, Mrs. Boyanovsky gave various false excuses to her customers for nonpayment of the refunds: the check had

been sent when it had not been sent; she would have to talk to her bookkeeper; the hotels were still holding the money and legal action was necessary to get the money back; and, the airline was holding the money. In fact the moneys had been commingled and put to other uses. At most, the evidence shows Mrs. Boyanovsky only entertained a hope she could raise enough money to cover the postdated checks on presentation to the bank. Clearly, she intended the payees *accept* the checks as payment and forbear further efforts to collect. The trier of fact could have believed her issuance of those checks was a desperate final act in an overall scheme to stall payment of the refunds. This evidence considered in light of the constant history of overdrafts at the banks from the inception of her business is sufficient for a rational trier of fact to find Mrs. Boyanovsky guilty of the crimes charged beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

■ Defendant's contention the nine elements of civil fraud are necessary to prove fraud in a criminal case is not supported by case citation and must be rejected. Further, it is readily apparent that many of the civil fraud requirements are not applicable to fraud in the criminal context. Moreover, the statute only requires an *intent* to commit fraud; it does not require commission of the fraud or proof that would entitle a civil plaintiff to recover damages.

Affirmed.

MUNSON and McINTURFF, JJ., concur.