[No. 35259.    Department One.    September 8, 1960.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANCIS A. JOHNSON, *Appellant*.[1]

[1]Reported in 355 P. (2d) 13.

*Hoof, Shucklin & Harris,* for appellant.

*Charles O. Carroll, Hugh R. McGough,* and *Frank L. Sullivan,* for respondent.

OTT, J.—October 3, 1958, Francis A. Johnson was charged by an amended information with thirty-six counts of uttering a forged instrument, and with twenty-eight counts of grand larceny by false representations. The charging portion for each count of the two crimes was identical, except as to names and amounts involved, and was as follows:

"I, CHARLES O. CARROLL, Prosecuting Attorney in and for the County of King, State of Washington, . . . by this Amended Information do accuse FRANCIS A. JOHNSON of the crime of GRAND LARCENY, committed as follows:

"He, the said FRANCIS A. JOHNSON, and Robert E. Haber, deceased, in the County of King, State of Washington, on or about the 5th day of December, 1955, with intent to deprive or defraud the owner thereof, willfully, unlawfully and feloniously did obtain from The Travellers Insurance Company, a corporation, certain personal property, to-wit: lawful money of the United States in the sum of $4,100.00, the property of The Travellers Insurance Company, by means of false or fraudulent representations, pretenses and writings, to-wit: A false and fraudulent claim prepared and presented to the Travellers Insurance Company for loss and damage to a dwelling and its contents, located at 2129 47th Avenue Southwest, Seattle, Washington, owned by F. E. Sanson, and insured by the Travellers Insurance Company, which claim was false and fraudulent in the following respects: Writings contained in the said claim represented that on the 18th day of November, 1955, a furnace explosion caused loss and damage to the above described house and its contents, when in fact there had been no explosion. Writings contained in the said claim represented that the above described dwelling suffered a total insured loss of $4,100.00, when in fact there had been no loss or damage. Writings in the claim represented that said claim was being presented by the insured, F. E. Sansom and that said insured signed the proof of loss statement contained therein, when in fact the insured had no knowledge of the claim and signed none of the documents contained therein.

"COUNT II. And I, CHARLES O. CARROLL, Prosecuting Attorney aforesaid, further do accuse FRANCIS A. JOHNSON of the crime of UTTERING A FORGED INSTRUMENT committed as follows:

"He, the said FRANCIS A. JOHNSON, in the County of King, State of Washington, on or about the 5th day of December, 1955, as part of the same transaction alleged in Count I and connected therewith, with intent to defraud, willfully, un-

lawfully, and feloniously and knowing the same to be forged, then and there did utter, offer, dispose and put off to the Peoples National Bank of Washington, a corporation, a certain false and forged instrument, to wit: a sight draft payable to F. E. Sansom and Olympic Building Co. in the amount of $4100.00, dated December 2, 1955, and drawn on the National Bank of Commerce of Seattle."

The defendant entered a plea of not guilty to the amended information. From a judgment and sentence based upon a verdict of guilty of the twenty-eight counts of grand larceny and thirty-five of the thirty-six counts of uttering a forged instrument, the defendant has appealed.

The record discloses that Robert E. Haber was a friend and business associate of appellant Johnson, who was a building contractor. Haber was the supervising adjuster of fire loss claims for the Travelers Insurance Company in its Seattle office. He had authority to issue drafts for the payment of individual claims up to five thousand dollars.

The office procedure of the Travelers Insurance Company for payment of a claim of loss by an insured commenced with the receipt by Haber of the insured's notice of loss. A clerk then established a file for this claim, assigning it a number. The file was sent back to Haber or to an adjuster designated by him. Thereafter, an adjuster's report, a notarized proof of loss by the insured, and other relevant documents were added to the file. A draft in payment of the claim was issued, based upon the information contained in the file.

Over a period of time, Haber prepared numerous false or altered claim files in the names of persons who were insured by Travelers but who had actually sustained no damage, or had suffered an actual loss in a lesser amount than that represented by the false claim file. Most of these files contained estimates or bills on the letterheads of building companies owned or controlled by Johnson.

After supplying the file with the required falsified documents, Haber would then authorize the issuance of a draft in payment of the false or altered claim. The drafts, made payable to the claimants named in the false claim files, would be directed

"To Office Manager, THE TRAVELERS INSURANCE COMPANY Republic Building, Third Avenue and Pike Street, Seattle, Wash.

Payable Through

THE NATIONAL BANK OF COMMERCE OF SEATTLE, Seattle, Wash."

The endorsement of the signature of the payee, on the reverse side of each draft, was forged by someone unknown. Each of the drafts described in the amended information contained a second endorsement as follows: "Olympic Building Co., F. Johnson (owner)." Johnson admitted signing the second endorsements. Johnson then negotiated the drafts by depositing them in a special Olympic Building Company account. The special account was owned by Johnson. He later transferred most of the funds from the special Olympic Building Company account to a bank account owned by the Hajo Corporation, which corporation had been formed by Johnson and Haber. Haber committed suicide before the charges were filed.

Appellant's ten assignments of errors raise four contentions:

(1) The evidence was insufficient to establish the crime of grand larceny by false representations, and, if any crime was established by the facts, it was that of embezzlement, with which offense the appellant was not charged. He relies on *State v. Smith*, 2 Wn. (2d) 118, 98 P. (2d) 647 (1939).

In the *Smith* case, the defendant was charged with larceny. He was the manager of a warehouse company and was the only officer of the company who was authorized to draw checks on the company bank account. We held that the facts established the crime of embezzlement and not larceny, because the funds were in Smith's lawful possession at the time he unlawfully appropriated them to his own use. Quoting with approval from 18 Am. Jur. 572, § 3, the distinction between larceny and embezzlement was stated as follows:

" '. . . The chief distinction between the two crimes lies in the manner of acquiring possession of the property. In embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully ap-

propriated by him; in larceny, there is a trespass in the unlawful taking of the property. Embezzlement contains no ingredients of trespass, which is essential to constitute the offense of larceny. Moreover, embezzlement does not imply a criminal intent at the time of the original receipt of the property, whereas in larceny the criminal intent must exist at the time of the taking.' "

■ In the instant case, Haber was not in possession of the funds at the time he appropriated them to his own use. He did not obtain possession thereof until other agents of the company, who had possession of the funds, caused the drafts authorized by Haber to be honored. The fact that Haber had authority to write drafts against the company does not establish that he had possession of the company's funds against which the drafts were written. The funds which were to pay the drafts were in the possession of other agents of the company. Haber's authority was only to order the payment of the company's funds. Haber's acquisition of possession of the company's funds being wrongful, he did not embezzle the funds and the rule of the *Smith* case is not apposite. Appellant was properly charged as an accessory to the crime of larceny by false representations.

Appellant further contends that he is not guilty as an accessory to the crime of larceny by false representations because there was no evidence that any false representations were communicated to the Travelers Insurance Company, and no evidence that the company relied upon any false representations.

■ We do not agree. Haber prepared the false claim files. Haber's superior in the company testified as follows:

"Q. Now can you determine from examining State's Exhibits 2 [a false claim prepared by Haber] and 3 [a draft payable to the claimant] whether this check was issued in reliance—whether the check, State's Exhibit 3, was issued because State's Exhibit 2 was prepared? A. That is correct. Your statement is correct. This draft was issued because of this claim file that was developed. The claim file is the authority and the supporting document for the issuance of this draft. They go together."

. Haber·signed the drafts for the payment of the fictitious claims. His signature on the draft was his representation to the company that the numbered claim file, as noted on the draft, contained proof meriting payment of the draft. That the company's agent, the office manager, relied upon the false representations is established by the fact that drafts were paid upon presentation.

(2) Appellant's next contention relates to the court's refusal to sustain a challenge to the sufficiency of the evidence relating to uttering forged instruments, and its refusal to direct a verdict of not guilty as to all of the counts relating thereto.

Appellant's position is that the evidence established that each instrument was, in all respects, genuine on its face; that only the endorsement of the name of the payee was forged, and that negotiating such a draft was not uttering a forged instrument, as contemplated by the statute.

Appellant's contention raises two questions:

(a) Does RCW 9.44.060, under which appellant was charged, include uttering an instrument containing a forged endorsement?

RCW 9.44.060 provides:

"Every · person who . . . shall utter . . . any forged writing, instrument or other thing, the false making, forging or altering of which is punishable.as forgery, shall be guilty of forgery in the same degree as if he had forged the same."

RCW 9.44.010 provides in part as follows:

". . . a 'written instrument,' or a 'writing,' shall include . . . any signature or writing purporting to be a signature of or intended to bind an individual, . . . "

If forging a payee's endorsement on a draft is punishable as forgery, it follows that uttering the forged endorsement is a crime under RCW 9.44.060.

RCW 9.44.020 provides:

"Every person who, with intent to defraud, shall forge any writing or instrument by which any claim . . . or any right ⋅ . . . is or purports to be . . . evidenced, created, . . . transferred, . . . or affected, . . . shall be guilty of forgery in the first degree, . . . ."

The endorsement of the named payee is essential to the negotiation of an order instrument. It is therefore, a signature by which a claim or right is transferred or affected, and the forgery thereof, with intent to defraud, is punishable as forgery. Knowingly uttering an instrument containing a forged endorsement, with intent to defraud, is therefore, proscribed by RCW 9.44.060.

(b) Was the amended information sufficient to apprise the appellant of the crime with which he was charged?

■ An information which charges a crime in the language of the statute and apprises an accused of the nature of the charge against him is sufficient. *State v. Griffith,* 52 Wn. (2d) 721, 726, 328 P. (2d) 897 (1958), and cases cited. The amended information charged, in the language of the statute, that the appellant, on days certain, with intent to defraud, uttered, disposed of, and put off to named banks certain false and forged instruments with knowledge that they were forged. The instruments were described with particularity.

Appellant contends that because the amended information failed to state in what particulars the instruments were forged, that is, that the endorsements were forged, it is not sufficient. We do not agree.

■ The gravamen of the crime proscribed by RCW 9.44.060, *supra,* is the uttering of a forged instrument with intent to defraud, and with knowledge that it is forged. The identification, in the information, of the particular portion of the uttered instrument that is forged is not essential to inform the accused of the offense charged. The crucial elements are the accused's knowledge that the instrument contains a forgery, and his uttering it with intent to defraud. The amended information was sufficient.

■ Appellant next contends that the proof was insufficient because it failed to establish the identity of the person who forged the endorsement of the payee on the back of each draft. Th appellant was charged with the crime of uttering a forged instrument. The identity of the person who perpetrated the forgery is not an essential of that crime. In this regard, it is sufficient to establish that the endorse-

ments were forged, and that appellant knew them to be forged.

■ (3): Appellant further contends that the court erred in permitting the introduction of exhibits and testimony relative to the preparation and payment of other false claims, upon which no charges were filed. He argues that this constituted evidence of unrelated crimes; hence, it was not admissible under the rule announced in *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). Therein, we stated the rule as follows (p. 368):

"This court, in common with all others, has held that a defendant must be tried for the offenses charged in the indictment or information, and that to introduce evidence of unrelated crimes is grossly and erroneously prejudicial. [Citing cases.] . . .

"Certain exceptions have developed to the rule of exclusion. . . . These exceptions are to show (1) motive, (2) intent, (3) the absence of accident or mistake, (4) a common scheme or plan, or (5) identity."

■ The trial court was of the opinion that the evidence was relevant to show a common scheme or plan, and admitted it on that basis. Appellant does not contend that the evidence did not tend to establish a common scheme or plan, but argues that the prejudicial effect of the evidence outweighed its value, and that it was error to admit it. The balancing of the relevancy and desirability of evidence of this type against its harmful effect upon an accused is a matter peculiarly within the discretion of the trial court. If it appears that the court has exercised its discretion, we will not overturn its ruling except for abuse thereof.

In *State v. Goebel, supra*, at p. 379, we stated:

" . . . This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion. . . ."

The trial court did exercise its discretion in the instant

case and, from our examination of the record, we are convinced that it was properly exercised.

(4) Finally, appellant assigns error to the trial court's communication with the jury in the absence of the appellant and his counsel.

After the case had been submitted to the jury, and during their deliberations, the bailiff delivered to the court a note from the jury room which read: *"No. 16* Clarify specific Bank intended in count #16." The court answered the note as follows: "I regret that I am not allowed to comment on the evidence in any way. This precludes me from giving you this information."

We agree with appellant that the conduct of the court in communicating with the jury in the absence of appellant or his counsel was not proper. However, we are unable to find that appellant was prejudiced by the communication. We have held that improper communication with the jury will not warrant a new trial, unless the defendant has been prejudiced thereby. *State v. Smith,* 43 Wn. (2d) 307, 261 P. (2d) 109 (1953); *State v. Carroll,* 119 Wash. 623, 206 Pac. 563 (1922).

In the instant case, the court communicated no information to the jury that was in any manner harmful to the appellant. The note was merely a refusal to communicate the information requested. Further, the jury acquitted the appellant on count No. 16, to which the note related. Under these circumstances, there was no prejudice resulting to the appellant from the improper communication.

The judgment and sentence is affirmed.

MALLERY, DONWORTH, FINLEY, and HUNTER, JJ., concur.

October 21, 1960. Petition for rehearing denied.