# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48941-4-II |
| Respondent, | |
| v. | |
| PATRICK NATHAN SHENAURLT, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Patrick N. Shenaurlt challenges his jury convictions for two counts of third degree assault. Shenaurlt argues that (1) the trial court committed prejudicial error by responding to a jury question without notice to and input from counsel and (2) insufficient evidence supports the jury's finding that Shenaurlt had the intent to commit assault. We reject Shenaurlt's arguments and affirm his convictions.

## FACTS

### I. TRIAL TESTIMONY

Officers Zack Spangler and Dean Waubanascum responded to a report that Shenaurlt was yelling on a specific street corner. As the officers approached Shenaurlt, he was shouting "nonsensical stuff" but stopped screaming as the officers came closer. Report of Proceedings (RP) (March 1, 2016) at 40. In response to the officers' questions, Shenaurlt stated that his name was Jesus Christ, and he refused medical and mental health services offered by the officers. When the

officers informed Shenaurlt that his yelling violated a noise ordinance and he needed to reduce his volume, Shenaurlt said, "'Okay'" and began to whisper responses to the officers' questions. RP (March 1, 2016) at 152.

As soon as the officers returned to their patrol vehicle, Shenaurlt began "screaming at the top of his lungs," and the officers exited the vehicle to arrest him. RP (March 1, 2016) at 44. Officer Waubanascum approached Shenaurlt, stated that he was under arrest, and grabbed his right arm to carry out the arrest. Officer Spangler testified that he observed Shenaurlt ball his left hand into a fist, which Officer Spangler interpreted to be a "striking or assaultive or pre-attack indicator." RP (March 1, 2016) at 44. Officer Spangler grabbed Shenaurlt's left wrist and elbow in an attempt to force Shenaurlt's hand behind his back and place him in handcuffs.

Shenaurlt started resisting both officers, trying to free his arms. Shenaurlt pulled his left arm forward and freed it from Officer Spangler's grasp and then "threw it back at [Officer Spangler's] head," striking the left side of his face and jaw line and causing him to stagger backwards. RP (March 1, 2016) at 45. Officer Spangler testified that the elbowing to his face appeared purposeful.

Shenaurlt lost his footing and fell on his back. Officer Waubanascum attempted to grab and subdue Shenaurlt, but he pulled his right leg close to his chest, looked directly at Officer Waubanascum, and kicked him in the knee, causing the officer to stumble backwards. Officer Waubanascum testified that Shenaurlt's kick appeared purposeful and intentional.

After these contacts occurred, Shenaurlt fled, and the officers chased him, deploying electronic control tools (stun guns) and pepper spray in an effort to subdue him. The officers also issued verbal commands and made numerous attempts to physically restrain Shenaurlt, only for

him to pull away and continue running. At one point during the chase, Shenaurlt appeared cornered and assumed a fighting stance with his hands balled into fists near his head, but then he managed to run away. During Shenaurlt's flight, he threw several objects in the officers' directions, including a bicycle, which hit Officer Waubanascum's legs.

Shenaurlt continued running, and eventually the officers caught up to him. Shenaurlt threw a punch at Officer Waubanascum but did not make contact. Officers Waubanascum, Spangler, and Wendy Haddow Brunk, who had recently arrived on the scene, worked together to physically restrain and handcuff Shenaurlt.

The State charged Shenaurlt with two counts of third degree assault under RCW 9A.36.031(1)(g).

## II. JURY INSTRUCTIONS

The parties agreed to the jury instructions.

Instruction 7 stated, "A person commits the crime of assault in the third degree when he or she assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." Clerk's Papers (CP) at 54.

Instruction 8 stated, "An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive." CP at 55.

Instruction 9 stated, "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime." CP at 56.

Instruction 10 provided, in relevant part, "To convict the defendant of the crime of assault in the third degree in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt: (1) That on or about November 15, 2015, the defendant assaulted Z. Spangler." CP at 57.

Instruction 11 similarly stated, in relevant part, "To convict the defendant of the crime of assault in the third degree in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt: (1) That on or about November 15, 2015, the defendant assaulted D. Waubanascum." CP at 58.

During deliberations, the jury submitted the following question to the trial judge: "[i]n instruction number 9, does the phrase 'when acting with objective or purpose to accomplish a result that constitutes a crime' refer to any crime or the specific crime of assault in this case?" CP at 61. Without notifying counsel, the judge responded, "You must go off the instructions as written." CP at 61.

The jury found Shenaurlt guilty as charged. Shenaurlt filed a motion to arrest judgment and/or motion for a new trial on the grounds that the trial court erred by failing to notify and consult counsel before responding to the jury's question. The trial court denied Shenaurlt's motion, ruling that the response to the jury question constituted harmless error and that no additional instructions clarifying the definition of intent would have been appropriate.

Shenaurlt appeals his convictions.

ANALYSIS

I. JURY QUESTION

The parties agree that the trial court erred when it answered the jury's question without notifying or consulting counsel. But the parties disagree over whether the error was harmless. We hold that although the trial court erred, the error was harmless because the trial court merely instructed the jurors to refer to instructions they had been given.

A. RULES OF LAW

When the jury submits a question about instructions to the trial court, the trial court "shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response." CrR 6.15(f)(1). A trial court commits error when it fails to notify and consult counsel before responding to a jury question. *State v. Jasper*, 158 Wn. App. 518, 541, 245 P.3d 228 (2010), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012). We review whether the error is prejudicial and thus constitutes reversible error. *State v. Ratliff*, 121 Wn. App. 642, 646, 90 P.3d 79 (2004).

Once the defendant raises the possibility that he was prejudiced by improper communication between the trial court and jury, the State bears the burden to prove the error is harmless beyond a reasonable doubt. *State v. Bourgeois*, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997). The trial court commits harmless error when, without first notifying and seeking input from counsel, it provides to the jury only a refusal to communicate requested information. *State v. Johnson*, 56 Wn.2d 700, 709, 355 P.2d 13 (1960). A trial court's response to a jury question without proper notification to counsel is also harmless when the response is "negative in nature and conveys no affirmative information." *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320

(1980). And it is harmless error when, without first consulting counsel, the trial court instructs jurors to refer to the instructions they have been given. *Jasper*, 158 Wn. App. at 543.

## B. HARMLESS ERROR

Shenaurlt argues that the trial court's error was prejudicial and grounds for a new trial[1] because the jury's question concerned a central issue of intent and Shenaurlt should have had the opportunity to request a more detailed and substantive response to the jury, which in turn may have impacted the jury's verdict. The State argues that the error was harmless because the trial court's response to the jury question was neutral, contained no information, and thus was harmless beyond a reasonable doubt. We agree with the State.

In *Johnson*, the Supreme Court found that the trial court committed harmless error when, without notifying or consulting counsel, it responded to the jury's question by saying, "'I regret that I am not allowed to comment on the evidence in any way. This precludes me from giving you this information.'" 56 Wn.2d at 709. On appeal, the trial court's action was held to be harmless error because the note contained no information that could potentially harm the defendant and was a mere refusal to provide any information. *Johnson*, 56 Wn.2d at 709. Similarly, in *Jasper*, the trial court, without notifying or consulting counsel, responded to two questions submitted by the jury during deliberations, saying, "'Please re-read your instructions and continue deliberating. No further instructions will be given to this question.'" 158 Wn. App. at 525-26. This error was held

---

[1] Shenaurlt frames the issue by asserting the error is grounds for a new trial. Shenaurlt failed to challenge the trial court's denial of his motion for a new trial, so we do not review it. *See* RAP 2.5(a). Instead, we determine whether the trial court's failure to notify and consult counsel before responding to the jury constitutes reversible error. *See Ratliff*, 121 Wn. App. at 645-46.

to be harmless because referring the jury to their instructions was neutral and provided no erroneous or harmful information. *Jasper*, 158 Wn. App. at 543.

In the present case, the trial court's error was analogous to the harmless errors of the trial courts in *Johnson* and *Jasper*. Here, as in *Johnson*, the trial court's note contained no information that could possibly harm the defendant. And like the trial court in *Jasper*, the trial court here merely directed the jury to use the instructions they had already been given.

Shenaurlt is correct that the trial court could have consulted counsel and issued a supplemental instruction in response to the jury's question.[2] However, it was within the trial court's discretion to determine whether to give further instructions. CrR 6.15(f)(1); *State v. Langdon*, 42 Wn. App. 715, 718, 713 P.2d 120 (1986). While Shenaurlt would have preferred that the trial court provide the jury with a supplemental instruction, the judge had no duty to answer the jury's question. Even if the jury was confused about the instruction regarding the definition of intent, this instruction is not challenged on appeal and was not challenged below. Therefore, the issue of that instruction's adequacy is not before us. RAP 2.5(a), 10.3(g).

The trial court's response was neutral, conveyed no information, and referred the jurors to the instructions. So the trial court's failure to notify and consult the parties did not prejudice Shenaurlt, and the trial court's error was harmless.

---

[2] Shenaurlt asserts that the trial court's error is grounds for a new trial because it denied him the opportunity to obtain a supplemental instruction, and this *lack of supplemental instruction* is the source of prejudice. In response, the State argues at length that the jury instructions were sufficient as written and that the trial court correctly responded to the jury by directing them to refer to the instructions they had been given. We need not address arguments about the sufficiency of the instructions because Shenaurlt did not assign error to the jury instructions or challenge the sufficiency of the instructions on appeal. Instead, we focus on whether the trial court's action—communicating with the jury without consulting counsel—was harmful to the defendant.

## II. Sufficiency of the Evidence

Shenaurlt asserts that the State submitted insufficient evidence to support the "intent" element of assault. The State disagrees. We agree with the State.

### A. Rules of Law

When reviewing sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the crime's essential elements beyond a reasonable doubt. *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). We assume all of the State's evidence and any reasonable inferences from it are true, and all reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

We defer to the trier of fact, which resolves conflicting testimony and generally weighs the persuasiveness of the evidence. *State v. Martinez*, 123 Wn. App. 841, 845, 99 P.3d 418 (2004). The jury's credibility determinations are not subject to review. *State v. Mines*, 163 Wn.2d 387, 391, 179 P.3d 835 (2008).

To prove third degree assault, the State must show that the defendant committed an intentional touching or striking of a law enforcement official. RCW 9A.36.031(1)(g); *State v. Jarvis*, 160 Wn. App. 111, 119, 246 P.3d 1280 (2011) (defining "assault" as "'an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury'") (quoting *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007)). The touching or striking of an officer is intentional when the person acts with the objective or purpose

to strike or hit the officer. *State v. Brown*, 94 Wn. App. 327, 335, 972 P.2d 112 (1999), *aff'd*, 140 Wn.2d 456, 998 P.2d 321 (2000); RCW 9A.08.010(1)(a).

## B. SUFFICIENT EVIDENCE SUPPORTS THE CONVICTIONS

Shenaurlt argues that sufficient evidence does not support the jury's verdict because his mental health issues made it impossible for him to manifest the requisite intent to commit assault. To support this claim, he points to evidence that he exhibited mental health issues, including claiming he was Jesus Christ and exhibiting a lack of self-awareness and mental coherence. The State responds that the jury could rationally determine that, even if some of the defendant's actions seemed bizarre, he nevertheless acted purposefully and with objective to strike the officers. We agree with the State.

Before Shenaurlt's arrest, when he was told that there was a noise ordinance, he began to whisper, demonstrating his ability to respond to his surroundings and comply with instructions. Shenaurlt also indicated that he understood he would be arrested if he continued to yell.

After the officers decided to arrest him, Shenaurlt balled his left hand into a fist before striking Officer Spangler. Based on Spangler's experience, he saw this as a striking/preattack indicator. It can be inferred from Shenaurlt's actions that he was acting with the purpose to strike Officer Spangler when Shenaurlt struck Officer Spangler in the face and jaw with his elbow.

Evidence also supports a finding that Shenaurlt acted intentionally when he looked directly at Officer Waubanascum, kicked Waubanascum in the knee, and then fled. Officers Spangler and Waubanascum testified that the elbowing and the kick appeared to be deployed on purpose.

Shenaurlt appeared motivated to prevent the officers from detaining him, as immediately after elbowing Officer Spangler and kicking Officer Waubanascum, he fled, looking behind himself. When Shenaurlt was chased by Officer Waubanascum, Shenaurlt threw a bicycle at Officer Waubanascum, striking him in the leg. Shenaurlt's repeated flight, assumption of a fighting stance, and aggressive conduct during the officers' attempts to subdue him demonstrate that he was acting with the objective to assault the officers to support his escape attempt.

Shenaurlt claims that "[h]is apparent assaults were clearly an involuntary result of this lack of self-awareness and mental coherence." Br. of Appellant at 9. However, it is the jury that weighs the evidence and determines the credibility of witnesses. *Martinez*, 123 Wn. App. at 845. The existence of some evidence supporting Shenaurlt's position does not establish that the evidence is insufficient to support the jury's finding that he intentionally assaulted the officers.

Viewing the evidence in the light most favorable to the State, as we must, a rational jury could find that the State proved beyond a reasonable doubt that Shenaurlt acted with the objective or purpose to strike the officers in a harmful or offensive manner, thus manifesting the necessary intent to commit third degree assault.

No. 48941-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, J.

JOHANSON, J.

We concur:

Worswick, J.

WORSWICK, J.

Bjorgen, C.J.

BJORGEN, C.J.