IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>        v.<br><br>NICHOLAS ACOSTA BATES,<br><br>                Appellant. | No. 81283-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Nicholas Bates was convicted of second degree assault, felony harassment, and unlawful imprisonment after a violent fight with Morgan George in which he cut open her leg with a knife. Bates appeals, contending that the court erred by refusing to instruct the jury on defense of property, by refusing to reveal an error in the jury verdicts before sending the jury back for continued deliberation, by imposing discretionary legal financial obligations (LFOs) without adequately inquiring into Bates's ability to pay, and by failing to enter written findings of fact and conclusions of law justifying its exceptional sentence. Because we disagree that the defense of property instruction was required or that Bates had a right to know what the error in the verdict was before the court sent it back, we affirm Bates's conviction. However, because we agree that the court made an inadequate inquiry into Bates's ability to pay LFOs, we remand for the court to rectify this sentencing error.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

In the early morning of July 14, 2019, Bates and his girlfriend, George, had a fight at George's apartment in Lynnwood, Washington. After a night out drinking with friends, Bates ended up kicking down the bathroom door while George was showering and entering the bathroom with a large butcher knife. George reported that he kept her trapped in the bathroom for 45 minutes, pressing the knife into every part of her body; kicking her in the ribs, back, and head; and telling her he would kill her. At the end of the fight, Bates slashed George's leg with the knife. George went to the emergency room with bruises and cuts all over her body and a heavily bleeding cut on her left shin, which was about three inches long, an inch and a half wide, and deep enough to reach her fatty tissue and muscles.

Bates was arrested and charged with second degree assault, harassment, and unlawful imprisonment, all with deadly weapon and domestic violence enhancements. In November 2019, the case proceeded to a jury trial.

At trial, Bates testified that after he drove George back to her apartment, they started arguing. Bates decided he wanted to leave to sleep on a friend's couch but realized that he had left his phone in the bathroom where George was showering. Bates was frustrated because he needed his phone to be able to call his friend and leave, and he yelled at George to open the door. He stated that George yelled back something like, she was not going to let Bates have the phone and it was "going to get broken again." This was significant to Bates because George had broken his previous phone. Bates then got a kitchen knife

to try to pop the door open. When that didn't work, because he was "pissed off" and needed his phone in order to leave, he kicked the door open. He testified that George then came toward him and fought with him while he tried to fend her off, and that she kicked her leg and he accidentally cut her with the knife he was still holding.

At the end of trial, Bates requested a defense of property instruction based on a theory that Bates had been trying to protect his phone. The court rejected Bates's request, concluding that the instruction was not warranted because, under an analysis of "whether or not the force used was more than necessary under the circumstance[s] . . . the evidence does not meet that standard." After the jury began deliberating, it informed the court that it was unable to reach a verdict. The court found that the jury was deadlocked and declared a mistrial.

In January 2020, the same judge presided over the second trial. The court informed counsel that its rulings on motions in limine from the first trial would apply to the second trial. It also told counsel that the jury instructions from the first trial would be its working set of instructions, but that counsel could propose any other instructions it liked. Bates renewed certain objections to the jury instructions, but did not raise the defense of property issue.

At the second trial, Bates again testified that he broke down the bathroom door so that he could get his phone and leave. He said that before he broke the door down, George "referenced basically destroying [his] new phone." When he broke the door down, George screamed at him and came towards him, trying to hit and kick him. George kicked up and hit the knife, and her leg split open.

3

Bates testified that "I didn't tell her I was trying to attack her, because I was not trying to attack her. I never had intention of attacking. The only intention I had of was breaking down the door is get my phone so I could leave." After the fight, when George had fled the apartment, Bates testified that he looked for his phone and found it "in the bathroom underneath some stuff."

At the end of trial, the court instructed the jury. Among other instructions, it directed the jury to consider whether Bates was guilty of second degree assault, and, if it was not satisfied that he was, to then consider whether Bates was guilty of fourth degree assault. However, the jury returned verdict forms that found Bates guilty on both second degree assault and the lesser included charge of fourth degree assault. Upon seeing the inconsistency, the court excused the jury and told the parties that the verdict forms were completed in a manner that was inconsistent with the jury instructions on the law. Bates asked to be informed as to the issue, but the court declined to do so, determining that informing the parties would conflict with the secrecy afforded to jury deliberations. Bates moved for a mistrial, and the court denied the motion.

The court brought the jury back in, and informed them that upon reviewing the forms it had identified an issue, and directed them to "return . . . to the jury room to continue with your deliberations with the knowledge . . . that I see an inconsistency between the materials that have been provided to me at this point in time and the Court's instructions and the law." The jury reentered the jury room and then returned with verdict forms that found Bates guilty on all charges but left the verdict form for fourth degree assault blank. The jury also found with

respect to all three charges that Bates was armed with a deadly weapon, that he and George were members of the same family or household, and that Bates's conduct manifested deliberate cruelty or intimidation.

The court sentenced Bates to an exceptional sentence of 84 months plus 24 months for the deadly weapons enhancements. It noted in its oral ruling that, although the standard range was 15 to 20 months, the aggravating factors found by the jury and the cruelty exhibited by Bates required an exceptional sentence. The court also stated that it had "no reason to believe" that Bates was indigent and therefore imposed several discretionary LFOs. Bates's attorney stated that Bates had no funds, that his family was paying the attorney fee, and that he had lost his job. The court dismissed these concerns, saying "I understand he is not employed currently, but when he is released from incarceration there is no reason to believe that he will not be able to be gainfully employed and financially independent."

Bates appeals.

ANALYSIS

Defense of Property Instruction

Bates first contends that the court erred by denying his defense of property instruction. We disagree.[1]

---

[1] Bates also contends that to the extent his attorney waived this argument, he received ineffective assistance of counsel. Bates did appear to waive this argument because although the court invited additional proposed instructions at the second trial, Bates abandoned the defense of property claim. State v. O'Brien, 164 Wn. App. 924, 932, 267 P.3d 422 (2011). Furthermore, renewing his objection would not have been a "useless endeavor" because arguably more evidence supported the defense at the second trial. State v. Cantabrana, 83 Wn.

"A defendant is entitled to have the jury instructed on his theory of the case if evidence supports that theory." State v. O'Brien, 164 Wn. App. 924, 931, 267 P.3d 422 (2011). A use of force is lawful when "used by a party about to be injured . . . in preventing or attempting to prevent . . . a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary." RCW 9A.16.020(3).

The court evaluates the evidence in the light most favorable to the defendant when determining whether sufficient evidence supports a defense instruction. State v. Callahan, 87 Wn. App. 925, 933, 943 P.2d 676 (1997). We review the court's refusal to give a requested jury instruction de novo when it is based on a ruling of law and for an abuse of discretion to the extent that it is based on a factual determination. O'Brien, 164 Wn. App. at 930-31.

Viewing the evidence here in the light most favorable to Bates, there is no support for a defense of property instruction. Although the evidence could support a finding that Bates came into the bathroom to protect his phone, there was no evidence whatsoever that Bates's use of force was to protect his phone. There was no suggestion that he saw the phone when he came in to the bathroom, that George was holding it, or that they were fighting over it. Instead, Bates claimed that he stabbed George accidentally when she kicked her leg and that he did not find his phone until after she left, "under some stuff" in the

---

App. 204, 208-09, 921 P.2d 572 (1996). However, because the court did not err by rejecting this instruction, we need not address whether Bates received ineffective assistance of counsel through his attorney's failure to object.

bathroom. These facts are clearly insufficient to support an inference that Bates was "about to be injured" or "attempting to prevent" a malicious interference with his property when he stabbed George, let alone that such force was "not more than [was] necessary." RCW 9A.16.020(3); see also State v. Yelovich, 191 Wn.2d 774, 788, 426 P.3d 723 (2018) (Wiggins, J., concurring) (noting that the statutory requirements "make it clear that defense of property must be used defensively rather than offensively"), State v. Walther, 114 Wn. App. 189, 192, 56 P.3d 1001 (2002) (defendant was not entitled to lawful force instruction where he was not about to be injured, property was not in his possession, and force used was more than necessary). Therefore, Bates was not entitled to a defense of property instruction, and the trial court did not err by denying to give one.

<u>Right to be Present in Discussion of Verdict Form Inconsistency</u>

Bates contends the trial court's handling of the jury's error in filling out the verdict form violated his due process rights, including his right to counsel and right to be present at trial. We disagree.

A defendant has a constitutionally guaranteed right to counsel and to be present at "all critical stages of a criminal proceeding." State v. Robinson, 153 Wn.2d 689, 694, 107 P.3d 90 (2005); State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). A critical stage with respect to the right to counsel is one where a "defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected." State v. McCarthy, 178 Wn. App. 90, 101, 312 P.3d 1027 (2013) (quoting State v. Heddrick, 166 Wn.2d 898, 910, 215 P.3d 201 (2009)). A critical stage with

respect to the right to be present is one where the defendant's presence has a reasonably substantial relationship to his opportunity to defend against the charge. Irby, 170 Wn.2d at 881. The defendant generally does not have the right to be present when their presence would be useless. Irby, 170 Wn.2d at 881. The inquiries into whether the right to counsel applies and whether the right to be present applies are "almost identical." McCarthy, 178 Wn. App. at 101. Whether a defendant's constitutional right has been violated is a question of law that we review de novo. Irby, 170 Wn.2d at 880.

A message from the jury should generally be answered in open court, and counsel should be given an opportunity to be heard before the trial court responds. Rogers v. U. S., 422 U.S. 35, 39, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975). But where a jury returns a verdict that is inconsistent, insensible, or not responsive to the issues, "they may be directed by the court to reconsider it and bring in a proper verdict; and this may be done with or without the consent of counsel and should be done whether requested or not." Haney v. Cheatham, 8 Wn.2d 310, 325-26, 111 P.2d 1003 (1941).

Here, Bates and his counsel were both present for the court's interaction with the jury, but were given only a limited opportunity to be heard because the court did not disclose the error in the verdict. Although Bates would have been able to engage in a more informed way if the court had told the parties what the inconsistency was, the court ultimately did not give any new instructions to the jury but instead simply directed the jury to continue its deliberations with the court's instructions in mind. Under Haney, this was proper for the court to do

8

regardless of Bates's or his counsel's input. Accordingly, because the court was not giving any instructions but merely directing the jury to return a proper verdict, this was not a critical stage of the proceeding and the court did not violate Bates's rights by not disclosing the error in the verdict form.[2]

Sentencing Issues

Finally, Bates raises procedural issues related to sentencing, contending that the court made an inadequate inquiry into his ability to pay legal financial obligations and entered insufficient findings and conclusions in support of the exceptional sentence. We address each contention in turn.

"Sentencing errors resulting in unlawful sentences may be raised for the first time on appeal." State v. Dunleavy, 2 Wn. App. 2d 420, 432, 409 P.3d 1077 (2018). "We review de novo whether a trial court's reasons for imposing an exceptional sentence meet the requirements of the [Sentencing Reform Act of 1981, chapter 9.94A RCW]." State v. Friedlund, 182 Wn.2d 388, 393-94, 341 P.3d 280 (2015).

Before imposing discretionary LFOs, the trial court must "conduct an individualized inquiry on the record concerning a defendant's current and future ability to pay." State v. Ramirez, 191 Wn.2d 732, 742, 426 P.3d 714 (2018). The court must "consider important factors, such as incarceration and a defendant's

---

[2] Furthermore, even if the court violated Bates's rights by directing the jury to continue deliberating, any error was harmless. State v. Johnson, 56 Wn.2d 700, 709, 355 P.2d 13 (1960) (holding that trial court erred by answering the jury question without counsel's input, but that because the court's response did not communicate any information, there was no prejudice resulting from the communication).

other debts, including restitution, when determining a defendant's ability to pay."
State v. Blazina, 182 Wn.2d 827, 839, 344 P.3d 680 (2015). If someone meets
the standard for indigency under GR 34, "courts should seriously question that
person's ability to pay LFOs." Blazina, 182 Wn.2d at 839. If the court finds a
defendant to be indigent at the time of sentencing, it may not order the defendant
to pay certain costs. RCW 10.01.160(3), RCW 36.18.020(2)(h).

Here, the court's inquiry into Bates's ability to pay failed to consider most
relevant factors, focusing only on the likelihood that Bates could obtain
employment after his incarceration. The court also found Bates to be indigent
four months later with no obvious change in Bates's circumstances. The State
concedes, and we agree, that the court's inquiry was inadequate under Blazina
and Ramirez. On remand, the court must make an individualized inquiry into
Bates's ability to pay, consider the relevant factors, and if it finds Bates to be
indigent it must strike any improperly imposed LFOs.

Bates also challenges the court's imposition of an exceptional sentence on
the grounds that the court failed to enter written findings supporting the sentence.
"Whenever a sentence outside the standard sentence range is imposed, the
court shall set forth the reasons for its decision in written findings of fact and
conclusions of law." RCW 9.94A.535. "Permitting verbal reasoning—however
comprehensive—to substitute for written findings ignores the plain language of
the statute. It would also deprive defendants of the finality accorded by the
inclusion of written findings in the court's formal judgment and sentence."
Friedlund, 182 Wn.2d at 394. "The remedy for a trial court's failure to enter

written findings of fact and conclusions of law is to remand the case for entry of those findings and conclusions." Friedlund, 182 Wn.2d at 394.

Here, the trial court entered written findings and conclusions supporting the exceptional sentence. The judgment and sentence, in a section entitled "Findings," stated that "[a]ggravating factors were . . . found by [the] jury by special interrogatory" and that "substantial and compelling reasons exist which justify an exceptional sentence." The jury's findings of aggravating factors were attached to the judgment. Thus, the record is not "devoid of written findings," Friedlund, 182 Wn.2d at 395, and the statutory requirement of written findings under RCW 9.94A.535 is satisfied. Moreover, as we held in State v. Sage, 1 Wn. App. 2d 685, 709, 407 P.3d 359 (2017), a sentencing court may not constitutionally enter findings of fact on an exceptional sentence beyond "confirm[ing] that the jury has entered by special verdict its finding that an aggravating circumstance has been proven." The court must then "make the legal . . . determination whether those aggravating circumstances are sufficiently substantial and compelling to warrant an exceptional sentence." Sage, 1 Wn. App. 2d at 709. Therefore, the court here complied with the statutory requirement discussed in Friedlund without exceeding the constitutional limit articulated in Sage.[3]

---

[3] We note that one of the cases reversed by the Supreme Court in Friedlund contained a judgment and sentence with substantially similar language to the judgment and sentence in this case. State v. Volk, No. 30707-7-III, slip op. at 17 (Wash. Ct. App. Feb. 4, 2014) (unpublished) (rev'd sub nom. Friedlund, 182 Wn.2d at 397), http://www.courts.wa.gov/opinions/pdf/307077.unp.pdf. Nonetheless, the Supreme Court remanded on the basis that the record was "devoid of written findings," which the record here is not. Friedlund, 182 Wn.2d

No. 81283-1-I/12

We affirm in part but remand for the court to make an individualized inquiry into Bates's ability to pay and to strike any improperly imposed LFOs.

WE CONCUR:

Andrus, A.C.J.

---

at 395.  Given the constitutional limit described in <u>Volk</u>, it does not appear that the trial court could enter any further findings.  <u>See</u> <u>State v. Carson</u>, No. 82537-2-I, slip op. at 12-14 (Wash. Ct. App. Aug. 2, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/825372.pdf (concluding that substantially similar language in a judgment and sentence was not insufficient under <u>Friedlund</u> and was appropriate under <u>Sage</u>).